Linda Henderson WILLIAMS,
Appellant,

v.

Louis Edward WILLIAMS, Appellee.

No. B14–85–848–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 13, 1986.

Marian S. Rosen and Michael P. Von Blon, Houston, for appellant.

Ronald Cohen, Houston, for appellee.

Before PAUL PRESSLER, SEARS and CANNON, JJ.

## OPINION

CANNON, Justice.

This is an appeal from a divorce proceeding tried before the court. Appellant, in nineteen points of error, complains of (1) the trial court's finding that the agreement in contemplation of marriage was valid; (2) the trial court's awarding separate property to appellee without sufficient tracing of assets and (3) the trial court's abuse of discretion in awarding a grossly disproportionate share of the community estate to appellee. We disagree with these arguments and affirm the judgment of the court below.

The trial court did not enter findings of fact or conclusions of law separate from the findings recited in the Decree. Appellant does not complain of this on appeal.

Appellant (Linda Henderson Williams) and appellee (Louis Edward Williams) were ceremonially married just before noon on Saturday, April 17, 1982, in Boerne, Texas. The record reveals that the parties had spent much time together and had traveled together extensively before this marriage ceremony. Both parties had a child or children from former marriages. Appellee, age 60 at the time of this marriage, was paying child support for a minor son. Appellant was 40 years of age at the time of the marriage. Late in the afternoon, on the day before the marriage, appellee

presented appellant with a typed agreement in contemplation of marriage. The parties were on the parking lot of the Boerne State Bank. Appellee reminded appellant that he had discussed this agreement with her before and was sure she would have no objection to signing it. Appellant indicated she did not like the agreement, however, because approximately twenty guests had been invited to the wedding and were to arrive the next day, she agreed. The parties entered the bank, secured a notary and executed the agreement. Appellant is now complaining of this agreement.

In points of error one through four, appellant argues that the trial court erred in finding that the agreement in contemplation of marriage was a valid agreement because appellee failed to sustain his burden of proof by clear and convincing evidence that the appellant entered into the agreement (1) knowingly, (2) after giving informed consent and (3) without being subjected to duress.

■ Agreements in contemplation of marriage are controlled by Tex.Fam.Code Ann. §§ 5.41, 5.45 (Vernon Supp.1986). Section 5.41(a) provides:

Before marriage, persons intending to marry may enter into a marital property agreement concerning their property then existing or to be acquired, as they may desire.

Section 5.45, which establishes the burden of proof concerning marital agreements, provides:

In any proceeding in which the validity of a provision of an agreement, partition, or exchange agreement made under this subchapter is in issue as against a spouse or a person claiming from a spouse, the burden of showing the validity of the provision is on the party who asserts it. The proponent of the agreement, partition, or exchange agreement or any person claiming under the proponent has the burden to prove by clear and convincing evidence that the party against whom enforcement of the agreement is sought gave informed consent and that the agreement was not procured by fraud, duress, or overreaching.

The agreement presented on appeal defines the separate estate of the parties and provides that income and increases from the respective separate estates of each party remain the separate property of each and further, that all rights in the separate estates then owned or thereafter acquired by each party remain free from any claim by the other party by reason of the marriage.

The testimony surrounding discussions of the agreement prior to its execution conflicts. At trial, appellant denied that she and appellee ever discussed the agreement prior to the day of its execution. Appellee, however, stated that the parties discussed and consented to the agreement's terms about six months prior to the wedding. This discussion took place, according to his testimony, while sitting on the couch at appellant's house on Olympic Street in Houston. Appellee also stated that during the discussion, he promised to execute a codicil to his will and leave everything to appellant if the parties remained married until his death. Four days after the marriage, appellee did, in fact, execute a codicil to his will, leaving all his property to appellant. Moreover, he gave appellant a copy of this codicil.

We also note that, at the time of the marriage, appellant was an educated person who had substantial business experience. She had attended business seminars and training seminars sponsored by the American Institute of Banking. Significant also is the fact that appellant's job exposed her to contracts which dealt with banking financial records. Further, appellant worked as a Move Coordinator for the relocation of the American Bank in Houston. This assignment included soliciting and reviewing the bids submitted for the furnishings and safety boxes of a large bank and for moving the furniture from one location to another. The fact that the president of the bank acted on her recommendation is an indication of her business acumen.

Additionally, we note that appellant was also familiar with the contents of the pre-marital agreement. She was of the opinion that the items designated in the agreement as the respective separate property of herself and of appellee were in fact their respective separate property at the time the agreement was executed. Appellant conceded that, at the time she executed the agreement, she had no objection to the division of the property as set forth therein. She did think, however, that the agreement put a romantic relationship on a crudely businesslike basis. Appellee's testimony disclosed that the agreement was a condition of his pending marriage and further, that he was motivated to protect his children by prior marriages.

We have considered the public policy in favor of such agreements in the September 1, 1981 amendments to the Texas Family Code. Our courts have construed the Family Code provisions as broadly as possible to allow the parties flexibility to contract with respect to property incident to a marriage. *Williams v. Williams,* 569 S.W.2d 867, 870 (Tex.1978). Considering the maturity of the individuals, their business backgrounds, their educational levels, their experiences in prior marriages, their experiences with the sale of properties, their respective ages and further, their motivations to protect their respective children, we do not find that the agreement in contemplation of marriage was obtained by fraud, duress or overreaching. Points of error one, two, three and four are overruled.

■ In point of error five, appellant contests the trial court's awarding to appellee as his separate property the items enumerated in the agreement. She maintains that the pleadings and proof were insufficient to support any claim of separate property based upon the premarital agreement. In his First Amended Cross-Petition, paragraph V, appellee pleaded as follows:

On April 16, 1982 Cross Petitioner [appellee] and Cross Respondent [appellant] entered into the following written agreement. Attached to this pleading as Exhibit "A" is a true and correct copy of the agreement entitled "Agreement in Contemplation of Marriage". Cross Petitioner will abide by all provisions of the agreement entered into with Cross-Respondent and asks that this agreement be adopted with its provisions carried out in the final judgment of this cause.

■ The purpose of the adequate notice requirement for a pleading is to give the opposing party information sufficient to enable them to prepare a defense. *Roark v. Allen,* 633 S.W.2d 804, 810 (Tex.1982). Our high court has written in *Gulf, Colorado & Santa Fe Railway Co. v. Bliss,* 368 S.W.2d 594, 599 (Tex.1963) that "[e]very fact will be supplied that can reasonably be inferred from what is specifically stated." By pleading and attaching the agreement as Exhibit A, appellee put appellant on notice of his intent to use the agreement at trial. Point of error five is overruled.

■ In points of error six, seven, ten, eleven, fourteen and fifteen, appellant argues that the trial court erred or abused its discretion in awarding to appellee the 1983 Cadillac Fleetwood Brougham, the 1960 Beech Bonanza Airplane, the accounts receivable of Louis E. Williams Jewels and the inventory of Louis E. Williams Jewels. She maintains that appellee failed to sustain his burden of proving the separate character of the property by specific tracing. We find that the trial court correctly characterized the property related to these points of error because the accounts receivable, assets and the inventory of Louis E. Williams Jewels are the separate property of appellee by definition in the agreement.

The agreement in contemplation of marriage specifically designates "all inventory, assets, accounts receivable and each and every item, material and immaterial, of that sole proprietorship known as Louis E. Williams Jewels ..." as the separate property of appellee. It further provides that all income from the above described separate estates of each party as well as proceeds, re-investments or changes in separate property remain the respective separate property of each party. The 1983 Cadillac is the only vehicle used in appel-

lee's business. Appellee traveled extensively in the sales business, and the Cadillac was purchased with income from his business. The 1960 model Beech Bonanza Airplane was carried on the books as an asset of the business. Further, the record indicates that the airplane was purchased from proceeds of the sale of appellee's condominium. The condominium is designated as appellee's separate property in the premarital agreement. Because the undisputed testimony disclosed that the proceeds from the sale of appellee's separate property were used to purchase the aircraft, and because no evidence of any commingling was presented with respect to those funds, the airplane is properly characterized as separate property. *Tarver v. Tarver,* 394 S.W.2d 780, 783 (Tex.1965).

Additional evidence which supports the characterization of the airplane as appellee's separate property involved modifications made to the airplane. The airplane was valued at $22,000 at the time of trial. Appellee had made modifications costing $15,000 to the plane through his business between the time he had purchased it and the time of trial. The invoices for those modifications and improvements were included in the records of Louis E. Williams Jewels. Points of error numbers six, seven, ten, eleven, fourteen and fifteen are overruled.

■ In points of error eight and nine, appellant argues that the trial court abused its discretion in awarding to appellee the Honda 1100 and the Honda 450. The Honda 1100 and the Honda 450 were bought with funds from the Louis E. Williams business account. Appellee testified that he was not able to sell the Honda 450 for $800 when he tried to sell it. The Honda 1100 was not valued in the record. The disposition of both the Honda 1100 and the Honda 450 would have a minimal effect on the trial court's judgment. In considering all of the circumstances of the parties, the lower court had ample evidence to support its decree. Points of error eight and nine are overruled.

■ In points of error twelve, thirteen and eighteen, appellant argues that the lower court abused its discretion by not characterizing the Boerne residence as community property and by awarding the entire Boerne residence to appellee without requiring the community to be reimbursed for the debt service. We find, however, that the trial court correctly characterized the Boerne property as appellee's separate property because it was purchased by the appellee before marriage and was specifically designated as separate property in the agreement. The land on which the residence is located was fully paid for by appellee before the marriage. The deed to the Boerne property was held in appellee's name alone, and the permanent financing for the construction of the residence was in appellee's name alone. Further, all payments therefor, including mortgage payments, were made with appellee's separate funds.

■ Appellant argues that the agreement only contains the legal description of the two lots and does not contain the word "improvements" and that appellee intended the "improvements" to be a gift to the community estate of the parties. We do not accept this argument because the appellee made all payments on the Boerne residence from the income of his separate business, which payments included the mortgage payments, insurance and taxes. Points of error twelve, thirteen and eighteen are overruled.

■ In points of error sixteen and seventeen appellant argues that the trial court erred in failing to reimburse the community estate for payments made by appellee to his former wife for child support payments and contractual alimony. All payments for the contractual alimony and for child support were made from the business account of Louis E. Williams Jewels, appellee's separate sole proprietorship. Therefore, the community estate is not entitled to reimbursement. Points of error sixteen and seventeen are overruled.

In point of error nineteen, appellant complains that the trial court abused its discretion in its division of the parties' community property. In support of the point of error, appellant lists the property received by appellant and the property received by appellee. Our review of the records indicates that the property awarded to appellee was purchased or acquired with funds as set out in paragraph three (3) of the agreement, to-wit, "inventory, assets, accounts receivable and each and every item, material and immaterial, of that sole proprietorship known as Louis E. Williams Jewels...."

Generally, an appellate court will not reverse the trial court's division of property unless a clear abuse of discretion is shown. To be an abuse of discretion, the disposition must be manifestly unfair and unjust. *Murff v. Murff,* 615 S.W.2d 696, 698 (Tex.1981). We cannot say as a matter of law that the lower court abused its discretion in the division of the community estate. We overrule point of error nineteen.

The judgment of the trial court is affirmed.