### In the Matter of the MARRIAGE OF Lynn Dale SMITH and Norma Alene Smith.

#### No. 06–02–00133–CV.

Court of Appeals of Texas, Texarkana.

Submitted June 19, 2003.

Decided Aug. 1, 2003.

Opinion on Rehearing Sept. 8, 2003.

---

Jack L. Paris Jr., Katherine A. Ferguson, Law Offices of Jack L. Paris, Jr., PC, Greenville, for appellant.

Winonia Griffin, Texarkana, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

Lynn Dale Smith (Mr. Smith) appeals the division of property in the decree dissolving his marriage to Norma Alene Smith (Ms. Smith), in which the trial court awarded her seventy-five percent of the retirement benefits Mr. Smith began receiving in 1985. At issue is the legal effect

of the residuary clause, Paragraph XII, of the couple's separation and partition agreement entered into in 1982.

*Factual and Procedural Background*

Lynn Dale Smith and Norma Alene Smith were married in 1953. In 1982, Ms. Smith filed for divorce, but it was never finalized. In December 1982, they entered into an agreement captioned "Separation and Partition Agreement" (the 1982 Agreement). Approximately twenty years of separation followed. In 2001, Mr. Smith filed a petition for divorce. In his petition, he relied on the 1982 Agreement for a division of the property. Ms. Smith filed a counterpetition for divorce, in which she was silent as to the 1982 Agreement and asked the trial court to divide the marital estate in a "just and right" manner as prescribed by the Texas Family Code. In the 1982 Agreement, Mr. and Ms. Smith divided real estate, vehicles, farm equipment, and made arrangements as to medical and life insurance and as to certain other retirement benefits. At the center of the dispute is Paragraph XII, the residuary clause, of the 1982 Agreement and its application to the disposition of certain benefits Mr. Smith began receiving on retirement. Paragraph XII provides:

## XII

The parties agree that, except as provided herein, each party shall own, have, and enjoy, independently of any claim or right of the other party, all property of every kind, nature, and description, wheresoever situated, which is now owned or held by him or her, or which may hereafter belong or come to belong to him or her, with full power to him or her to dispose of the same as fully and effectively in all aspects and for all purposes, as if he or she were unmarried.

For eleven years, before working with Aramco, Mr. Smith worked with Reynold's Electric as an operating engineer. Based on this service, Mr. Smith began to receive checks from the Operating Engineers' Pension and Retirement programs for approximately $270.00 in 1984. This retirement plan is specifically allocated in Paragraph X of the 1982 Agreement: "all income from the Operating Engineers' Pension and Retirement programs will be received by Husband during the course of their separation, but that any rights that Wife may have to such fund upon Husband's death, shall in no way be altered."

In June 1985, Mr. Smith also began receiving a monthly payment in the amount of $1,950.00 labeled General Organization For Social Insurance Department Of Overseas Benefits, Riyadh Kingdom of Saudia Arabia (GOSI retirement benefits). The 1982 Agreement purports to dispose of "most of their community property." But it makes no specific reference to the disposition of the GOSI retirement benefits. While the provisions for division of the marital estate are quite specific, the agreement did exclude specific reference to certain items in the community estate, such as cattle and a parcel of land. In total, the current value of the real estate and other assets divided between the parties is disproportionate. According to Ms. Smith's calculations, Mr. Smith received property, including the retirement benefits received, that is now valued at approximately between $618,000.00–$620,000.00, and Ms. Smith received property currently valued at approximately $100,000.00.

In large part, the divorce decree divided the property in accordance with the terms of the 1982 Agreement. In a one-page memorandum preceding the divorce decree,[1] the trial court concluded, however,

---

1. The memorandum was signed on October 18, 2001. The divorce decree was signed on

that the agreement did not cover the GOSI retirement benefits and, to "balanc[e] the equities" and since Mr. Smith failed to maintain a life insurance policy benefitting Ms. Smith as required under their agreement, allotted Mr. Smith twenty-five percent of the GOSI retirement benefits and seventy-five percent to Ms. Smith.

## Analysis

### Ms. Smith's Crosspoint: ERISA Preemption

■ On appeal, Ms. Smith contends the federal Employee Retirement Income Security Act (ERISA) preempts state law that allows the trial court to distribute the benefits from the Aramco retirement plan. While it is true ERISA represents broad federal preemption in matters concerning retirement plans, Ms. Smith did not raise this issue at trial. Although whether ERISA would have preempted the state law authorizing distribution of the GOSI retirement plan would likely pose interesting issues, this Court must refrain from addressing it. At first glance, the ERISA preemption issue sounds in terms of subject matter jurisdiction. After further research, we conclude that the question poses a conflict of federal and state law rather than a question of subject matter jurisdiction.

■ The United States Supreme Court addressed the issue of failure to raise a preemption argument at trial and whether that failure waives the argument. *Int'l Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 381–82, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986). After having defended the suit on the merits, appellant union argued for the first time in its motion for judgment notwithstanding the verdict that the National Labor Relations Act (NLRA) preempted the appellee's state claims of fraud and misrepresentation. *Id.* at 385, 106 S.Ct. 1904. The NLRA gives the National Labor Relations Board (NLRB) exclusive power to hear disputes of this nature. *Id.* at 390, 106 S.Ct. 1904. Since the NLRB has exclusive jurisdiction, the court held that the issue of preemption presents a choice of forum issue rather than a choice of law issue, and the choice of forum issue could not be waived by failing to raise it at the trial court level. *Id.* at 391, 106 S.Ct. 1904. From *Davis*, a rule has been deduced: a preemption argument that affects the choice of forum cannot be waived by failure to raise it at trial, whereas a preemption argument that affects only the choice of law to be applied in the case can, in fact, be waived by such failure. *See Dueringer v. Gen. Am. Life Ins. Co.*, 842 F.2d 127, 130 (5th Cir.1988) (holding that preemption of ERISA over state common-law actions involving an employee benefit plan presented a choice of law question that could be waived).

The Dallas court addressed a similar issue when former employees prevailed in

April 23, 2002. It is unclear whether the trial court refused to enforce the 1982 Agreement in its entirety or in part or whether it enforced the agreement according to its construction of the agreement. The divorce decree, although silent as to the agreement, reflects the division as set forth in the agreement except for the court's award to Ms. Smith of seventy-five percent of the GOSI retirement benefits. The one-page memorandum from the trial court refers to the 1982 Agreement and "give[s][it] a lot of weight." The memorandum summarizes and reiterates

the awards as listed in the decree and explains that it awards as such in order to "balanc[e] the equities" and in consideration of Mr. Smith's failure "to maintain life insurance on his life with wife as beneficiary under paragraph VII" of the agreement. It appears that the trial court treats the agreement as enforceable and that it simply construes the agreement to not cover the GOSI retirement benefits, as it wrote: "However, [the agreement] relates to 'most' of the community and where it doesn't divide an interest the court must act."

a suit to recover benefits under a profit-sharing plan. *Great N. Am. Stationers, Inc. v. Ball,* 770 S.W.2d 631 (Tex.App.-Dallas 1989, writ dism'd). The court applied the rule in *Davis* and came to the conclusion that the issue of preemption, on these facts, involved only the choice of law to be applied, rather than the choice of forum. *Id.* at 632–33. That being so, the issue of preemption *was* waived by failure to bring it before the trial court. *Id.* at 633. Dealing specifically with ERISA, the court noted that state courts have jurisdiction over plan participants' actions to recover benefits, to enforce their rights under the plan, and to clarify their rights to benefits in the future. *Id.* at 633 (citing to ERISA provisions 29 U.S.C.A. § 1132(a)(1)(B), (e) (West 1985)). All other causes of action under ERISA fall under the exclusive jurisdiction of the federal courts. 29 U.S.C.A. § 1132(e)(1) (West 1999).

▇ The Texas Supreme Court confirmed the holding in *Ball. See Gorman v. Life Ins. Co. of N. Am.,* 811 S.W.2d 542, 545 (Tex.1991). A party may raise the ERISA preemption argument for the first time on appeal if the issue of preemption in the case implicates the subject matter jurisdiction of the court. *Id.* Otherwise, a party must affirmatively set forth the preemption argument pursuant to Rule 94 of the Texas Rules of Civil Procedure and must raise the issue at trial, or else it is waived. *See id.* at 546; Tex.R.App. P. 33.1(a).

Here, Ms. Smith asserts ERISA preemption against Mr. Smith's claim regarding his rights under the GOSI retirement benefits plan. This claim involves participants' rights and contract construction and, like the claims in *Ball,* does fall under ERISA's grant of jurisdiction to the state courts. It appears that ERISA preemption, here, would not operate to deprive the state trial court of jurisdiction. Rather, preemption would alter the law that the court would apply to the case. Had the ERISA preemption argument been raised before the trial court, the resulting issue would concern a potential conflict between Texas law of community property and domestic relations and federal law of beneficiaries, assignment, and alienation under ERISA.[2] This conflict would not have taken the matter out of the trial court's jurisdiction. Therefore, Ms. Smith's failure to assert preemption of ERISA at trial waives the argument, and the issues that ERISA would have raised with respect to the distribution of the GOSI retirement benefits are not properly before us.

Having found that ERISA will not apply to the distribution of these benefits because the issue was not raised at trial, we will apply Texas law to construe the partition agreement and to examine the trial court's award of the benefits between Mr. and Ms. Smith.

*Standard and Scope of Review*

▇ In the absence of findings of fact and conclusions of law, an appellate court must uphold the trial court's judgment on any legal theory supported by the record. *Seaman v. Seaman,* 425 S.W.2d 339, 341 (Tex.1968). A number of theories could serve as the basis for the trial court's judgment awarding Ms. Smith seventy-five percent of the GOSI retirement benefits.[3]

---

2. *See Egelhoff v. Egelhoff,* 532 U.S. 141, 146, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001); *Keen v. Weaver,* —— S.W.3d ——, No. 01–0447, 2003 WL 21467100, 2003 Tex. LEXIS 82 (June 19, 2003); *Barnett v. Barnett,* 67 S.W.3d 107, 122 (Tex.2001).

3. The Texas Family Code restricts the available defenses to enforcement of property agreements executed on or after September 1, 1993. *See* Tex. Fam.Code Ann. § 4.105 (Vernon 1998). A party can no longer assert a common-law contract defense against a properly

The trial court could have construed Paragraph XII of the 1982 Agreement to not cover this particular piece of property and awarded Ms. Smith seventy-five percent of the retirement plan under a just and right division. Ms. Smith contends the trial court awarded her seventy-five percent of the plan since Mr. Smith had materially breached the 1982 Agreement by his failure to maintain the $350,000.00 life insurance policy benefitting Ms. Smith.[4] To examine this theory, we must look to basic contract law principles and determine whether the record supports this theory. Finally, Ms. Smith argues the trial court could have found the 1982 Agreement to be unconscionable and, therefore, unenforceable. As a result, the trial court divided the property without reference to the agreement and, instead, issued a just and right division of the marital estate. We will address each of these theories in turn.

### 1. *Construction of the Residuary Clause*

Contract construction is a question of law for the court and one that an appellate court will review de novo. Mr. Smith argues the payments at issue should fall under Paragraph XII of the 1982 Agreement where he retains rights to all his property not otherwise distributed under the agreement. Ms. Smith contends the residuary clause does not cover the benefits at issue, making the court's division of the undistributed community property a proper remedy.

A spouse has a community property interest in the other spouse's retirement benefits that accrued during marriage. *Valdez v. Ramirez*, 574 S.W.2d 748, 749 (Tex.1978). So, Ms. Smith had an interest in the accrued GOSI retirement benefits that Mr. Smith earned during their marriage. The issue before us is whether the 1982 Agreement covers these GOSI retirement benefits. If not, then the property is held by the spouses as tenants in common and the property is subject to partition by the court. *See Wilde v. Murchie*, 949 S.W.2d 331, 332 (Tex.1997) (citing *Busby v. Busby*, 457 S.W.2d 551, 554 (Tex. 1970)). If the agreement does cover the GOSI retirement benefits, then the trial court erred in dividing the property in a manner inconsistent with the terms of the agreement.

The construction of an unambiguous contract is a question of law for the court. *Buys v. Buys*, 924 S.W.2d 369, 372 (Tex.1996). When construing the agreement, our primary concern is to ascertain and give effect to the parties' intentions as expressed in the agreement. *Appleton v. Appleton*, 76 S.W.3d 78, 84 (Tex.App.-Houston [14th Dist.] 2002, no pet.). To ascertain the intent of the parties, we must examine the entire instrument and give effect to all the provisions so that none will be rendered meaningless. *Id.* No single provision, when read alone, should control. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). If the agreement is worded so that it can be given a certain or definite legal meaning, then the agreement is not ambiguous. *Buys*, 924

---

executed partition agreement. Mr. and Ms. Smith entered into this agreement in 1982, well before Section 4.105 limited the available defenses. The common-law defenses of failure of consideration and ambiguity are still available against the Smiths' agreement.

**4.** Ms. Smith also asserts that the 1982 Agreement should fail due to a failure of consideration. We find this contention without merit. This is not a matter of failure of consideration; rather, it concerns issues of breach, an issue we will address in our discussion. Clearly, there was adequate consideration for an enforceable contract.

S.W.2d at 372. Conflicting interpretations, as we have here, and even unclear language do not necessarily render the contract ambiguous. *Appleton,* 76 S.W.3d at 84.

■ So, the specific question before us is whether the residuary clause of Paragraph XII contains a description of the covered property that is sufficient to include the GOSI retirement benefits. The several analogous cases reveal two general types of residuary clauses used in property agreements. One category is the "possession and/or control" residuary clause, generally treated as the more narrow of the two types. The other general category, referred to as the broadly-worded clauses, uses language intended to cover a wider range of property. Whether a residuary clause covers retirement benefits is a frequent issue before the courts, usually the subject of a post-divorce partition suit pursuant to Section 23.001 of the Texas Property Code. *See* TEX. PROP.CODE ANN. § 23.001 (Vernon 2000); *Busby,* 457 S.W.2d at 554.

Retirement benefits were not included in a residuary clause when the clause applied to "any separate property he may now have or acquire in the future, and all other property of whatever nature, separate or community, *in his possession or claimed by him....*" *Yeo v. Yeo,* 581 S.W.2d 734, 737 (Tex.App.-San Antonio 1979, writ ref'd n.r.e.) (emphasis added). The husband in *Yeo* asserted that, since he had the power to terminate his employment and claim his benefits, he had possession of the benefits and the residuary clause should apply to them accordingly and bar the subsequent suit to partition the property. *Id.* The court called this right a future contract right that did not involve the type of possession necessary to fall into the residuary clause. *Id.* at 738. "Possession," as used in the residuary clause, means "property

over which the parties have physical control or, at least, a power of immediate enjoyment and disposition." *Id.* Relying on the reasoning in *Yeo,* the San Antonio Court of Appeals excluded retirement benefits from coverage under the residuary clause when it covered "any and all other property" in his possession and control. *Dunn v. Dunn,* 703 S.W.2d 317, 319 (Tex. App.-San Antonio 1985, writ ref'd n.r.e.); *see also Smith v. Smith,* 733 S.W.2d 915, 916 (Tex.App.-Houston [1st Dist.] 1987, writ ref'd n.r.e.); *Dessommes v. Dessommes,* 505 S.W.2d 673, 676 (Tex.App.-Dallas 1973, writ ref'd n.r.e.).

On the other hand, a residuary clause did dispose of retirement benefits when it read as follows:

All of the other properties, financial assets and belongings of the parties hereto, whether separate or community, not specifically set aside to the defendant [Norbert Buys] under Paragraph I. above shall be and is hereby specifically set apart, assigned, given, granted and conveyed to plaintiff [Alene Buys] as the separate property of the plaintiff herein and the defendant herein expressly releases, assigns, gives, grants and conveys to the plaintiff herein all the defendant's right title and interest in and to the property hereby set apart to Plaintiff that he now has or may have, free of and waiving any and all claims at law or in equity that he has or may have, in whole or in part to such property.

*Buys,* 924 S.W.2d at 370; *see also Tharp v. Tharp,* 772 S.W.2d 467 (Tex.App.-Dallas 1989, no writ); *Teaff v. Ritchey,* 622 S.W.2d 589 (Tex.App.-Amarillo 1981, no writ). In a substantially shorter, but similarly broad, residuary clause, the husband's retirement benefits were awarded under the divorce decree that incorporated the parties' agreement when the clause simply covered "all community property

not mentioned above." *Jacobs v. Cude,* 641 S.W.2d 258, 259 (Tex.App.-Houston [14th Dist.] 1982, writ ref'd n.r.e.). The *Jacobs* court also emphasized the purpose of a residuary clause: "By its very nature, a residuary clause encompasses those things not specified in the decree but included in the community property under the jurisdiction of the court." *Id.* at 260.

The residuary clause in the 1982 Agreement between Mr. and Ms. Smith is a broadly-worded residuary clause, much like the clause at issue in *Buys.* The language of the clause clearly indicates that the parties intended that it cover all other property not specifically divided by the agreement regardless of possession or control. A clause in the first paragraph of the 1982 Agreement refers to "most of their community property," a reference that Ms. Smith asserts indicates that the parties did not intend the agreement to address all the property in the marital estate. Again, though, this phrase must not be read to control the interpretation of the entire agreement. In fact, if we were to conclude, as Ms. Smith urges, that the phrase "most of their community property" was controlling, then there would have been no need for the residuary clause at all. *See id.* The very presence of the residuary clause negates Ms. Smith's construction of the agreement.

The 1982 Agreement does not specifically allocate the GOSI retirement benefits to either Mr. or Ms. Smith. Accordingly, we conclude the residuary clause of Paragraph XII governs the disposition of the funds. That being so, the funds, having "come to belong" to Mr. Smith, still belong to Mr. Smith independent of any claim or right of Ms. Smith, as provided in Paragraph XII. Based on a contrary construction of the agreement, the trial court could not have properly divided the benefits in a manner inconsistent with the 1982 Agreement.

### 2. *Breach of Contract Theory*

Ms. Smith contends that, since Mr. Smith failed to maintain the life insurance policy as specified, Mr. Smith breached the agreement. In order for us to uphold the trial court's judgment based on this theory, we must conclude from the record that the equitable remedy of rescission of the agreement is proper under these circumstances.

As a general rule, equity will not allow rescission of a contract for the mere breach of the contract, especially when damages would be an adequate remedy. *See Ryan v. Collins,* 496 S.W.2d 205, 209 (Tex.Civ.App.-Waco 1973, writ ref'd n.r.e.) (citing *Chenault v. County of Shelby,* 320 S.W.2d 431, 433 (Tex.Civ.App.-Austin 1959, writ ref'd n.r.e.)). A partial breach can be sufficient to grant rescission in only two instances: 1) if it affects a material part of the agreement going to the essence of the contract, or 2) it clearly evidences an intention by the party in default to rescind or abandon the agreement. *Atkins v. Beasley,* 544 S.W.2d 505, 507 (Tex.App.-Waco 1976, no writ). The record indicates neither of these circumstances. Maintenance of a life insurance policy for the benefit of Ms. Smith, while likely very important to Ms. Smith, is not the essence of this agreement, the purpose of which is to divide a marital estate between spouses. Furthermore, Mr. Smith clearly did not intend to rescind or abandon the agreement, since he has continued to act in accordance with the majority of the provisions, as illustrated by his maintenance of health insurance for Ms. Smith throughout the separation.

Since we find neither situation in which a partial breach warrants rescission, we conclude that the record fails to support

the judgment on a breach of contract theory.

### 3. *Unconscionable Contract Theory*

 Whether a contract is unconscionable presents a question of law for the court to decide. TEX. FAM.CODE ANN. § 4.105(b); *Wade v. Austin,* 524 S.W.2d 79, 85 (Tex.Civ.App.-Texarkana 1975, no writ). A reviewing court has the duty to independently evaluate the trial court's findings on the law and addresses the issue on a case-by-case basis, looking to the entire atmosphere in which the agreement was made. *Pearce v. Pearce,* 824 S.W.2d 195, 199 (Tex.App.-El Paso 1991, writ denied). Because of the confidential relationship between a husband and wife, Texas courts have closely scrutinized property agreements made by spouses during marriage and have imposed the same duties of good faith and fair dealing on spouses as required of partners and other fiduciaries. *Daniel v. Daniel,* 779 S.W.2d 110, 115 (Tex.App.-Houston [1st Dist.] 1989, no writ).

 In our examination of a marital property agreement, we address certain specific considerations, such as the maturity of the individuals, their business backgrounds, their educational levels, their experiences in prior marriages, their respective ages, and their motivations to protect their respective children. *See Williams v. Williams,* 720 S.W.2d 246, 249 (Tex.App.-Houston [14th Dist.] 1986, no writ). The term "unconscionable" carries no precise legal definition. *Arthur's Garage, Inc. v. Racal–Chubb Sec. Sys.,* 997 S.W.2d 803, 815 (Tex.App.-Dallas 1999, no pet.); *Marsh v. Marsh,* 949 S.W.2d 734, 739–40 (Tex.App.-Houston [14th Dist.] 1997, no writ) In general, the term "unconscionable" describes a contract that is unfair because of its overall one-sidedness or the gross one-sidedness of its terms. *Arthur's Garage,* 997 S.W.2d at 815. However-

er, the courts will not protect "a party who knowingly enters a lawful but improvident contract...." *Wade,* 524 S.W.2d at 86. "[T]he fact that a bargain is a hard one does not entitle a party to be relieved therefrom if he assumed it fairly and voluntarily." *Id.*

 Here, we first point out that the record indicates approximately twenty years passed from the time the Smiths entered into this agreement and the time Ms. Smith takes the position that the agreement was unconscionable. During those twenty years, both parties accepted the benefits under this agreement without complaint of unconscionability. Furthermore, the agreement itself recites that both parties were represented by their own "experienced attorneys" and that these represented parties fully understood the terms of the agreement and considered them "just, adequate and reasonable." The trial court, in its memorandum, does not find the contract unconscionable. In fact, the trial court gives the agreement a great deal of weight in the areas that it covers, weight it would not give if the agreement were unconscionable.

While the value of the property that each party received under the contract now seems quite disproportionate, we do not evaluate whether the contract is unconscionable years later. Rather, we look to the circumstances at the time the parties entered into the contract. No evidence was presented as to the value of the retirement benefits as of 1982. Likely, such value was uncertain at that time. Likewise, the parties could not predict any appreciation or depreciation in value of any of the property received under the agreement. So, while we note the marked difference in the current value of the property received by Mr. and Ms. Smith, we cannot say the contract under which each

received the property was an unconscionable one.

We conclude that the record reveals no legal theory to support the trial court's decision to divide the GOSI retirement benefits in the manner it did. Accordingly, we reverse the judgment of the trial court and render judgment that Mr. Smith, alone, is entitled to the monthly payment of GOSI retirement benefits.

### OPINION ON REHEARING

In her motion for rehearing, Norma Alene Smith asserts that our opinion conflicts with the express language of the partition and separation agreement of 1982 and operated to deny her any survivorship interest in the General Organization For Social Insurance Department Of Overseas Benefits, Riyadh Kingdom of Saudia Arabia (GOSI retirement benefits) based on our interpretation of the residuary clause.

Paragraph X of the agreement states that "any pension or retirement rights that Wife may have as surviving spouse upon Husband's death under any ARAMCO plan, shall in no way be altered." We held that "[t]he language of the [residuary] clause clearly indicates that the parties intended that it cover all property *not specifically divided by the agreement* regardless of possession or control." *In re Marriage of Smith*, No. 06–02–00133–CV, 115 S.W.3d at 134, 2003 WL 21805103, 2003 Tex.App. LEXIS 6688, at *16 (Texarkana August 1, 2003, no pet. h.) (emphasis added).

The record does not clearly indicate what survivorship rights, if any, Ms. Smith may have in any ARAMCO plan. From our opinion, however, it is clear Ms. Smith maintains ownership of whatever survivorship rights she may have had under any ARAMCO plan since the agreement specifically reserved those rights to her. Our construction of the residuary clause does not alter those rights. It is the specific language in Paragraph X, not the residuary clause, which governs Ms. Smith's survivorship rights under the plan.

With this clarification, we overrule Ms. Smith's motion for rehearing.