# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————————

No. 03-3329

————————

Pro Tech Industries, Inc., d/b/a Fusion    *
Seal Corporation,    *
   *
         Appellant,    *
   *    Appeal from the United States
      v.    *    District Court for the Eastern
   *    District of Missouri.
URS Corporation, d/b/a URS Group,    *
Inc.; American Home Assurance    *
Company,    *
   *
         Appellees.    *

————————

Submitted: April 13, 2004
Filed: July 27, 2004

————————

Before MORRIS SHEPPARD ARNOLD, RILEY, and COLLOTON, Circuit
      Judges.

————————

RILEY, Circuit Judge.

This appeal asks whether the parties should be compelled to arbitrate a dispute. The parties clearly agreed to arbitrate, and the dispute falls squarely within their broad arbitration agreement. However, Pro Tech Industries, Inc. (Pro Tech) contends the agreement to arbitrate is unenforceable because (1) URS Corporation (URS) failed to make a required demand for arbitration of Pro Tech's claims, and URS thereby waived its right to arbitrate, and (2) Pro Tech cannot now afford to arbitrate,

rendering the arbitration agreement unconscionable.[1] The district court[2] compelled arbitration and dismissed the lawsuit. Because the issue of waiver is for the arbitrator to decide and because the issue whether Pro Tech can afford the cost of arbitration is "speculative," we affirm, adhering to the strong federal policy favoring arbitration, see Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217 (1985), and Federal Arbitration Act, 9 U.S.C. §§ 1-16.

## I.    BACKGROUND

In December 2001, Pro Tech, a Missouri corporation, agreed to provide URS, a Texas corporation, with pipe, pipe fittings, pipe fusion, and leak testing for an environmental reclamation facility being built at the White Sands Test Facility operated by NASA (White Sands project). URS was the general contractor on the White Sands project, let bids for the pipe work, selected Pro Tech for the work, and negotiated with Pro Tech.

The parties memorialized the terms of this joint undertaking in a written agreement (Agreement). Under the Agreement, URS and Pro Tech agreed to arbitrate "[a]ll claims, disputes and other matters . . . arising out of, or relating to" the Agreement. A choice-of-law provision, included in twelve-point bold-face type, specified that the subcontract agreement "shall be interpreted, construed and governed under the laws of . . . Texas." In the event of a dispute, the Agreement

---

[1]Pro Tech's notice of appeal suggests it is appealing the decision of the district court dismissing without prejudice Pro Tech's claims against American Home Assurance Company. Pro Tech failed to raise this claim in their initial brief before this court. "Claims not raised in an initial brief are waived, and we generally do not consider issues raised for the first time on appeal in a reply brief." Mahaney v. Warren County, 206 F.3d 770, 771 n.2 (8th Cir. 2000) (citation omitted). We see no reason to depart from our rules in this case.

[2]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

mandates "[n]otice of demand for arbitration shall be filed in writing with the other party to [the] Agreement in accordance with the rules of the American Arbitration Association."

In July 2002, a dispute arose, ultimately leading URS to invoke the arbitration provision. The dispute stemmed from Pro Tech removing its equipment and personnel from the White Sands project and ceasing to provide any further services, notwithstanding substantial work remaining under the Agreement. This occurred despite URS having paid Pro Tech in excess of $424,000 of the $471,071 total contract price. In November 2002, Pro Tech filed an action in Missouri state court, claiming (1) URS owed Pro Tech money under the Agreement; (2) Pro Tech was entitled to additional compensation for performing extra work not included in the Agreement; and (3) URS coerced Pro Tech into providing this extra work. Pro Tech sought compensatory damages in excess of $200,000 and punitive damages in excess of $2,000,000. URS removed the case to the federal district court on diversity grounds.

URS moved to dismiss and to compel arbitration, citing the Agreement's arbitration provision. The district court held the arbitration provision was enforceable and Pro Tech's claims against URS were subject to that arbitration provision. The court granted URS's motion to compel arbitration, but refused to dismiss Pro Tech's claims. Instead, the district court stayed the case, pending the outcome of arbitration. The district court advised the parties that, if neither party initiated arbitration within thirty days of the court's order, the court would deem that failure to be a novation of the contract and a waiver of the right to arbitrate.

Within thirty days of the district court's order, URS served its demand for arbitration on Pro Tech and filed the demand with the American Arbitration Association (AAA). The demand asserted a claim by URS against Pro Tech and requested that Pro Tech pursue any claims against URS in arbitration. Pro Tech

subsequently moved to vacate the district court's order asserting URS's demand was not sufficient to initiate arbitration of Pro Tech's claims, and URS had therefore waived its right to arbitrate those claims. Pro Tech also moved to bar arbitration of all claims, contending it did not have the financial resources to participate in arbitration. Because of this alleged poverty, Pro Tech asked the district court to declare the arbitration provision unconscionable.

The district court denied Pro Tech's motion to vacate, concluding URS had not waived its right to arbitrate Pro Tech's claims. The district court also denied Pro Tech's motion to bar arbitration of all claims, concluding the costs did not render the Agreement unconscionable. The district court dismissed Pro Tech's claims, holding the parties' dispute must be resolved by arbitration pursuant to the Agreement's arbitration provision. Pro Tech appeals.

Pro Tech presents three reasons why it should not be forced to arbitrate its claims against URS: (1) URS waived its right to compel arbitration; (2) URS's demand for arbitration was insufficient; and (3) the arbitration provision is unenforceable, because Pro Tech cannot now afford arbitration. We first ask whether these contentions are "gateway matters" that courts, not arbitrators, must decide. Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, ___, 123 S. Ct. 2402, 2407 (2003) (holding courts must decide "certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy").

## II.    DISCUSSION

We review de novo the district court's decision to compel arbitration. See Keymer v. Mgt. Recruiters Int'l., Inc., 169 F.3d 501, 504 (8th Cir. 1999). "Factual findings are reviewed for clear error." Faber v. Menard, Inc., 367 F.3d 1048, 1051 (8th Cir. 2004) (quoting Dobbins v. Hawk's Enters., 198 F.3d 715, 717 (8th Cir. 1999)). We recognize an agreement to arbitrate is a matter of contract, and "is a way

to resolve those disputes–but only those disputes–that the parties have agreed to submit to arbitration." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995).

As with any contract dispute, we first look to the express terms, which require Pro Tech and URS to arbitrate "[a]ll claims, disputes and other matters in question between the parties to this agreement arising out of, or relating to" the contract. The Agreement sets forth specific procedures governing the initiation of arbitration, and the manner in which it is conducted, and provides that the resulting decision "shall be final." These express terms unambiguously reflect the parties' intent both to arbitrate disputes arising from the Agreement and to be bound by the arbitration decisions resolving such disputes. It is against this backdrop that we turn to the governing provisions of the Federal Arbitration Act (FAA).

## A.    Federal Arbitration Act

Because the Agreement is "a contract evidencing a transaction involving commerce," it is subject to the FAA. 9 U.S.C. § 2. The FAA provides that any arbitration agreement within its scope "shall be valid, irrevocable, and enforceable." Id. The FAA permits "[a] party aggrieved by the alleged . . . refusal of another to arbitrate" to petition any federal district court for an order compelling arbitration. Id. § 4. By its terms, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter, 470 U.S. at 218. A court's role under the FAA is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute. Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 680 (8th Cir. 2001). The parties do not dispute Pro Tech's claims fall within the scope of the arbitration provision. If the response is also affirmative on the other question, then the FAA requires the court to enforce the arbitration provision in accordance with its terms.

**B.     Waiver and Timely Demand**

"[W]hether the parties have submitted a particular dispute to arbitration, i.e., the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (quoting AT&T Tech., Inc. v. Communications Workers of Am., 475 U.S. 643, 649 (1986)) (second alteration in original); see First Options, 514 U.S. at 944. We must decide whether Pro Tech's allegations of waiver and insufficient and untimely demand, are questions of arbitrability.

"[T]he presumption is that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.'" Howsam, 537 U.S. at 84 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)) (second alteration in original). Indeed, "in the absence of an agreement to the contrary, issues of substantive arbitrability . . . are for a court to decide and issues of procedural arbitrability, *i.e*., whether prerequisites such as *time limits*, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide." Howsam, 537 U.S. at 85 (citations omitted).

Following this precedent, we conclude questions of whether waiver occurred and whether demand was sufficient and timely under the agreement, involve issues of procedural arbitrability, matters presumptively for the arbitrator, not for the judge. See Int'l. Ass'n of Bridge, Structural, Ornamental, & Reinforcing Ironworkers, Local 493 v. EFCO Corp. & Constr. Prods., Inc., 359 F.3d 954, 957 (8th Cir. 2004) (noting "the question of whether the procedural prerequisites have been complied with or . . . waived . . . is a matter for the arbitrator and not for the court"); Dominium Austin Partners, LLC v. Emerson, 248 F.3d 720, 728 (8th Cir. 2001) (ruling issue of waiver of arbitration because of untimely demand is for arbitration); Contracting Northwest, Inc. v. City of Fredricksburg, 713 F.2d 382, 386 (8th Cir. 1983) (ruling the court would not entertain an objection that opposing party failed to deliver an arbitration

demand within time limit); <u>Auto., Petro. & Allied Indus. Employees Union, Local No. 618 v. Town & Country Ford, Inc.</u>, 709 F.2d 509, 514 (8th Cir. 1983) (stating "the issue of whether the Union's alleged failure to satisfy the notice requirement barred arbitration is one of procedural arbitrability," and "is reserved for the arbitrator, and not the district court").

Furthermore, arbitrators are the experts about the meaning of their own rules, and are comparatively better able to interpret and to apply them than courts. In the absence of any contrary statement in the arbitration provision, it is reasonable to infer that the parties intended the provision to reflect that understanding. <u>See</u> <u>Howsam</u>, 537 U.S. at 85 ("for the law to assume an expectation that aligns (1) decisionmaker with (2) comparative expertise will help better to secure a fair and expeditious resolution of the underlying controversy–a goal of arbitration systems and judicial systems alike").

Accordingly, we conclude Pro Tech's allegations of waiver and insufficient demand fall within the class of gateway procedural disputes that do not present "questions of arbitrability" this court should decide.

### C.    Unconscionability

Having decided the above gateway arbitrability issues against Pro Tech, we turn to Pro Tech's next contention, that the arbitration provision should not be enforced because Pro Tech cannot now afford the costs of arbitration, thereby rendering the provision unconscionable. Generally, when deciding whether an arbitration provision is unconscionable, courts apply ordinary state-law principles governing the formation of contracts. <u>First Options</u>, 514 U.S. at 944; <u>see</u> 9 U.S.C. § 2 (agreements are valid unless grounds "exist at law or in equity for the revocation of any contract"). The parties do not dispute that Texas law governs, pointing to the Agreement's choice-of-law provision. Accordingly, we look to Texas state law to determine whether the arbitration provision here is unconscionable. <u>See</u> <u>Volt Info.</u>

Sci., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ., 489 U.S. 468, 477 (1989).

Under Texas law, the doctrine of unconscionability can be applied to arbitration provisions in the same manner as it applies to other contracts. See In re FirstMerit Bank, N.A., 52 S.W.3d 749, 756 (Tex. 2001). A reviewing court must independently evaluate the law and address the unconscionability issue "on a case-by-case basis, looking to the entire atmosphere in which the agreement was made." Pearce v. Pearce, 824 S.W.2d 195, 199 (Tex. Ct. App. 1991); see Dobbins, 198 F.3d at 717. "[T]he basic test for unconscionability is whether, given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." FirstMerit, 52 S.W.3d at 757. The purpose of the unconscionability doctrine is not to disturb the allocation of risks because of superior bargaining power, but to prevent oppression and unfair surprise. Id. Although the term "unconscionable" generally "describes a contract that is unfair because of its overall one-sidedness or the gross one-sidedness of its terms," Texas "courts will not protect 'a party who knowingly enters a lawful but improvident contract.'" In re Marriage of Smith, 115 S.W.3d 126, 135 (Tex. Ct. App. 2003) (citation omitted). "[T]he fact that a bargain is a hard one does not entitle a party to be relieved therefrom if [the party] assumed it fairly and voluntarily." Id. (citation omitted). And the party seeking to avoid the arbitration provision has the burden of proving an arbitration provision is unconscionable. AutoNation USA Corp. v. Leroy, 105 S.W.3d 190, 198 (Tex. Ct. App. 2003).

Pro Tech simply cannot carry this burden. Pro Tech claims the arbitration provision is unconscionable solely because it allegedly cannot afford to pay the fees invoiced by the AAA. The arbitration provision forcing Pro Tech to arbitrate potential disputes is not harsh or one-sided. The arbitration provision does not limit either party's participation in choosing arbitrators, and provides for application of the

AAA rules. The arbitration provision does not give URS any greater rights than Pro Tech, and does not limit Pro Tech's ability to recover in arbitration. Furthermore, Pro Tech and URS were both businesses holding themselves out as sophisticated enough to negotiate a $471,071 government construction contract. Considering the parties' commercial backgrounds and the Agreement's terms, the arbitration provision was not unconscionable at the time the parties made the contract. Applying Texas law, we conclude the district court did not err in determining the arbitration provision was not unconscionable.

Pro Tech also contends the prohibitive costs of arbitration present a hardship and are unconscionable, rendering the arbitration provision unenforceable under Green Tree Financial Corp. v. Randolph, 531 U.S. 79, 90 (2000). We disagree. In Green Tree, the Supreme Court addressed arbitration of federal statutory claims, and did not analyze the unconscionability of an arbitration agreement under state law. Id. at 90-92. Under Texas law, we only consider the circumstances at contract formation to determine if a contract is unconscionable, rendering Pro Tech's current inability to afford the costs of arbitration irrelevant to the conscionability determination.

After arbitration, Pro Tech may seek limited judicial review. See 9 U.S.C. § 10; First Options, 514 U.S. at 942.

## III.   CONCLUSION

Accordingly, we affirm the district court's judgment dismissing the proceedings and compelling arbitration.

_____