

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-22-00070-CV

IN THE MATTER OF THE MARRIAGE OF
NATHAN LEVI LAVENDER AND CANDICE MARIE LAVENDER
AND IN THE INTEREST OF H.L.L., J.G.L., AND I.K.L., CHILDREN

On Appeal from the County Court at Law
Bowie County, Texas
Trial Court No. 21D0251-CCL

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

# MEMORANDUM OPINION

In a nunc pro tunc final decree of divorce dissolving the marriage of Nathan and Candice Lavender, the County Court at Law of Bowie County (CCL) ordered Nathan to pay spousal maintenance to Candice in the amount of $1,200.00 per month for a period of eighty-one months.

On appeal, Nathan contends that the trial court abused its discretion by (1) finding Candice eligible for an award of spousal maintenance; (2) awarding an amount of spousal maintenance that exceeded the statutory maximum amount; and (3) awarding spousal maintenance for a period exceeding the statutory maximum length of time.

We affirm the trial court's determination that Candice was eligible for spousal maintenance, but we find that the duration of the spousal maintenance award exceeded the statutory maximum. We reverse the trial court's judgment and remand to the trial court for further proceedings consistent with this opinion.

## I.      Factual and Legal Background

Nathan and Candice were married on March 14, 2012. During the marriage, the couple had three children. During the marriage, Nathan, having obtained a degree in criminal justice, primarily worked for various law enforcement agencies. Candice was a homemaker. In February 2021, the couple separated, and Nathan moved out of the family home. On March 9, 2021, Nathan filed a petition for divorce, alleging irreconcilable differences. Candice filed an answer and counter-petition for divorce that alleged grounds for a disproportionate share of the community estate and made a request for spousal maintenance.

After a final hearing, the CCL dissolved the marriage, awarded joint custody of the couple's three children, ordered standard visitation and child support, and awarded Candice the marital home and a disproportionate share of the assets after debt.  The trial court also ordered Nathan to pay spousal maintenance in the amount of $1,200.00 per month for a period of eighty-one months.  Nathan appeals from the trial court's spousal maintenance orders.

## II.    Standard of Review

We review an award of spousal maintenance under an abuse-of-discretion standard.  *In re Marriage of Lendman*, 170 S.W.3d 894, 899 (Tex. App.—Texarkana 2005, no pet.).  "A trial court abuses its discretion only when it has acted in an unreasonable or arbitrary manner, or when it acts without reference to any guiding principle."  *In re P.M.G.*, 405 S.W.3d 406, 410 (Tex. App.—Texarkana 2013, no pet.) (quoting *In re Marriage of Jeffries*, 144 S.W.3d 636, 638 (Tex. App.—Texarkana 2004, no pet.)).  In our review, legal and factual sufficiency of the evidence are relevant factors in assessing whether the trial court abused its discretion but are not independent grounds of error.  *Id.* (citing *Niskar v. Niskar*, 136 S.W.3d 749, 753 (Tex. App.—Dallas 2004, no pet.)).  To make our determination, "we consider whether the trial court had sufficient evidence upon which to exercise its discretion and, if so, whether it erred in the exercise of that discretion."  *Id.* (citing *In re W.C.B.*, 337 S.W.3d 510, 513 (Tex. App.—Dallas 2011, no pet.)).  There is no abuse of discretion if there is some substantive and probative evidence that "support[s the trial court's] decision or if reasonable minds could differ as to the result."  *In re Marriage of McFarland*, 176 S.W.3d 650, 656 (Tex. App.—Texarkana 2005, no pet.) (quoting *Smith v. Smith*, 155 S.W.3d 303, 305 (Tex. App.—Corpus Christi–Edinburg 2003,

3

no pet.)).  When, as here, the trial court has not entered findings of fact and conclusions of law, we "must uphold the trial court's judgment on any legal theory supported by the record." *In re Marriage of Smith*, 115 S.W.3d 126, 131 (Tex. App.—Texarkana 2003, pet. denied).

### III.  Spousal Maintenance Eligibility

In his first point of error, Nathan contends that the trial court abused its discretion in awarding spousal maintenance because Candice failed to rebut the presumption against an award of spousal maintenance.

"An award of spousal maintenance is intended to provide temporary and rehabilitative support for a spouse whose ability to support herself has eroded over time while engaged in homemaking activities and whose capital assets are insufficient to provide support." *In re Marriage of McCoy*, 567 S.W.3d 426, 428–29 (Tex. App.—Texarkana 2018, no pet.) (quoting *In re Marriage of Hallman*, No. 06-09-00089-CV, 2010 WL 619290, at *5 (Tex. App.—Texarkana 2010, pet. denied) (mem. op.)).  "The trial court [has discretion to] award spousal maintenance only if the party seeking [it] meets specific [statutory] requirements." *Deltuva v. Deltuva*, 113 S.W.3d 882, 888 (Tex. App.—Dallas 2003, no pet.); *see* TEX. FAM. CODE ANN. § 8.051.

The eligibility for spousal maintenance under Section 8.051 differs, depending on the parties' circumstances.  TEX. FAM. CODE ANN. § 8.051.  Under the facts of this case, Candice was eligible for spousal maintenance only if she could show that she had been married to Nathan for at least ten years and that she lacked both sufficient property and the ability to earn sufficient

4

income to provide for her minimum reasonable needs.[1]  *See* TEX. FAM. CODE ANN. § 8.051(2)(B); *In re Marriage of Hallman*, No. 06-09-00089-CV, 2010 WL 619290, at *5 (Tex. App.—Texarkana 2010, pet. denied) (mem. op.).  In addition, when, as here, a party seeks spousal maintenance under subsection (2)(B), there "is a rebuttable presumption that [spousal] maintenance . . . is not warranted unless the [party] has exercised diligence in:  (1) earning sufficient income to provide for [her] minimum reasonable needs; or (2) developing the necessary skills to provide for [her] minimum . . . needs" while the parties were separated and the case was pending.  TEX. FAM. CODE ANN. § 8.053; *see Quijano v. Amaya*, No. 13-16-00485-CV, 2018 WL 1870476, at *4 (Tex. App.—Corpus Christi–Edinburg Apr. 19, 2018, no pet.) (mem. op.).

Nathan does not dispute that he and Candice were married more than ten years or that she lacked both sufficient property and the ability to earn sufficient income to provide for her minimum reasonable needs.  Rather, Nathan asserts that there is no evidence of Candice's diligence to either earn sufficient income or to develop the necessary skills to provide for her minimum reasonable needs.  Candice argues that her testimony that she secured employment, made arrangements to pay for her costs of living, and had plans to further her education, given the appropriate resources, was sufficient evidence to overcome the presumption that spousal maintenance was not warranted.

Since Nathan did not have the burden of proof at trial, "his no-evidence complaint challenges the legal sufficiency of the evidence supporting the trial court's exercise of its

---

[1]The determination of a spouse's minimum reasonable needs is fact-specific and determined on a case-by-case basis. *Hallman*, 2010 WL 619290, at *5 (citing *Deltuva*, 113 S.W.3d at 888).

5

discretion." *McCoy*, 567 S.W.3d at 429. The evidence is legally insufficient if (1) there is "a complete absence of evidence of a vital fact"; (2) the "rules of law or of evidence [bar the court] from giving weight to the only evidence offered to prove a vital fact"; (3) there is no more than a mere scintilla of "evidence offered to prove a vital fact"; or (4) the opposite of the vital fact is conclusively established by the evidence. *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010). "More than a scintilla of evidence exists when the evidence reaches a level enabling reasonable and fair-minded people to differ in their conclusions." *Sherman v. Sherman*, 650 S.W.3d 897, 899 (Tex. App.—Texarkana 2022, no pet.). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

In the case of *In re Marriage of McFarland*, Susan McFarland testified that she had been a homemaker for most of the marriage, that she had allowed her manicurist's license to expire several years prior, and that she had only recently been able to find temporary employment where she made between $7.00 and $9.00 per hour because of her limited education, training, and experience. *In re Marriage of McFarland*, 176 S.W.3d at 653–54. The trial court found that, if she "returned to school on a full-time basis, it would be unlikely that she could continue working a full-time job given the young ages of her three children." *Id.* at 652. This court affirmed the award of spousal maintenance. *Id.* at 659–60.

Here, Candice testified that, for the latter portion of the school year, she worked as a teacher's aide for the Red Lick School District. She did not work after the school year ended

6

because paying for child-care for her three young children was cost prohibitive. Based on her high school education and lack of job training, the cost of daycare would exceed what she could earn working. She testified that she planned to continue working as an aide when the school year began again, and she had "look[ed] into" taking a course to "become certified as [a teacher's] aid[e]."

Candice had also applied for an "in the home" medical position, but her child-rearing responsibilities prevented her from taking the job. Candice testified that she had applied for and obtained government assistance in the form of "food stamps," drove a borrowed car, and obtained loans from her mother and mother-in-law to pay for her mortgage and clothing "for interviews." On cross-examination, Candice conceded that she had not taken any college courses or job training to make herself more employable and, likewise, had not done "anything to help provide for [her] minimum reasonable needs."

Taken as a whole, Candice's testimony is evidence of diligence. *See In re Marriage of Eilers*, 205 S.W.3d 637, 646 (Tex. App.—Waco 2006, pet. denied) (holding that evidence of wife's low paying job and of her actions exploring other feasible jobs in the vicinity was evidence of diligence). Based on the foregoing, we find that there was more than a scintilla of evidence to support the trial court's implied finding of diligence and that, therefore, the trial court was within its discretion to find that Candice was eligible to receive spousal maintenance. Accordingly, we overrule this point of error.

## IV.     Spousal Maintenance Period

Nathan contends that the trial court erred by ordering that spousal maintenance be paid for eighty-one months because that exceeds the statutory maximum time period.  Candice agrees that was error.  She states in her brief, "Given the facts of this case, the trial court committed error in awarding maintenance for a period of time which exceeded five (5) years."  We agree as well.

The duration of a spousal maintenance order is limited by Section 8.054 of the Texas Family Code.  *See* TEX. FAM. CODE ANN. § 8.054; *Crane v. Crane*, 188 S.W.3d 276, 279 (Tex. App.—Fort Worth 2006, pet. denied).  Where the parties have been married for more than ten years, but less than twenty years, the trial court may award spousal maintenance for a period of up to five years.  TEX. FAM. CODE ANN. § 8.054(a)(1)(A)(ii).  Here, the trial court ordered Nathan to pay spousal maintenance for a period of eighty-one months, which exceeds the five-year maximum period of sixty months. *See id.*  Therefore, we sustain this point of error.  Though we could, if we so determined, simply modify the award of spousal maintenance to conform to the statutory maximum duration, we opt instead to remand.  We remand because it appears that the amount and duration of the spousal maintenance ordered by the trial court were intertwined with other considerations best left to the trial court's examination on remand.

At the conclusion of the divorce proceedings, the court stated,

> The Court is going to order the sum of $1200 per month spousal support for 81 months.  However, Mr. Lavender will be given credit for his equity in the home and what that does is basically makes it zero.  So, he won't have to pay spousal support out-of-pocket, but it's coming out of his equity in the home, so that should be a wash.

Rather than make an outright award of Nathan's equity in the marital residence to Candice, the trial court ordered Nathan to pay monthly spousal maintenance in the form of equity "in lieu of" cash.[2] The nunc pro tunc final decree of divorce stated:

> However, in lieu of Nathan Levi Lavender being ordered to pay to Candice Marie Lavender as maintenance the sum of one thousand two hundred dollars ($1,200.00) per month for a period of eighty-one (81) months, IT IS ORDERED that Candice Marie Lavender shall retain Nathan Levi Lavender's security interest in the marital residence located at 152 Cedar Ridge Circle, Texarkana, Bowie County, Texas, as awarded to Candice Marie Lavender hereinabove . . . .

When determining spousal maintenance, the trial court may consider the amount and liquidity of the property awarded in the divorce proceedings. *See In re McFarland*, 176 S.W.3d at 658–59 (outlining several cases that have considered the amount of property awarded in the divorce proceeding when determining whether to award spousal maintenance). While the division of the marital estate can be considered when setting spousal maintenance, spousal maintenance serves a distinct function. *See* TEX. FAM. CODE ANN. § 8.051; *see Dalton v. Dalton*, 551 S.W.3d 126, 130–31 (Tex. 2018) (discussing the historical background of court-ordered spousal maintenance, the statutory requirements for spousal maintenance, and the enforcement tools available for spousal maintenance that are not available for the enforcement of voluntary spousal support agreements incorporated into a divorce decree).

---

[2]Though the effect of the trial court's order is in some ways akin to a disproportionate division of the marital estate, the effect is not quite the same as an outright in-the-present award to the wife of all equity in the marital residence. The parties address this as a maintenance issue, and thus, we analyze it as such.

In light of the above and given that the duration of maintenance ordered by the trial court exceeded the statutory maximum, we reverse the trial court's judgment and remand to the trial court for further proceedings consistent with this opinion.[3]

Jeff Rambin
Justice

Date Submitted: March 14, 2023
Date Decided: May 10, 2023

---

[3]Nathan also argues that the amount of spousal maintenance ordered, $1,200.00 per month, exceeds the statutory maximum amount of twenty percent of his "average monthly gross income." *See* TEX. FAM. CODE ANN. § 8.055(a) ("A court may not order maintenance that requires an obligor to pay monthly more than the lesser of: (1) $5,000; or (2) 20 percent of the spouses' average monthly gross income."). Both parties agree that twenty percent of Nathan's regular paycheck comes to a monthly spousal maintenance amount of $1,017.66. The parties diverge, however, over the amount and regularity of Nathan's income from other sources and whether any such income should be included in Nathan's average monthly income. Because we are remanding on other grounds, we do not resolve this point.