In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00383-CV**
_____

**TATIANA TELEGINA, Appellant**

**V.**

**VALADIMIR NECHAYUK, Appellee**

**On Appeal from the County Court at Law No. 3**
**Montgomery County, Texas**
**Trial Cause No. 17-11-14052-CV**

**MEMORANDUM OPINION**

On July 20 or 21, 2017, Tatiana Telegina and Valadimir Nechayuk, both Russian citizens, executed a "Marital Settlement Agreement for Dissolution of Marriage" ("Dissolution Agreement") before they filed a joint application on July 21, 2017, with the Russian Consulate seeking a divorce certificate. On August 22, 2017, the Russian Consulate granted a certificate of divorce to Telegina and Nechayuk. On November 17, 2017, Telegina subsequently filed her Original Petition

for divorce in the Montgomery County Court at Law. She later added claims for post-divorce division of property, bodily injury, and breaches of contract.

Nechayuk filed his "Plea to the Jurisdiction, Motion to Dismiss, and Original Answer," contending the trial court lacked subject matter jurisdiction, as the parties were already divorced. Following a Rule 308b hearing, the trial court agreed with Nechayuk and determined the parties were effectively divorced in proceedings carried out by the Russian Consulate which disposed of Telegina's divorce claim. Telegina proceeded with her claims for post-divorce division of property, bodily injury, and breaches of contract. The trial court later granted two partial motions for summary judgment for Nechayuk which disposed of all Telegina's claims except one, then dismissed Telegina's sole remaining claim. Nechayuk's attorney's fees claim was the sole matter tried to a jury. The jury awarded him: $816,871.50 for defending against the divorce suit and mandamus proceedings; appellate attorney's fees totaling $300,000.00; and $10,641.00 in costs. The trial court signed a Final Judgment consistent with the jury's findings, with the appellate attorney's fees being contingent upon Telegina's unsuccessful appeal.

In 102 issues, Telegina appeals the trial court's Final Judgment and complains about several interlocutory orders. Nechayuk responds that Telegina's Brief fails to comply with the Texas Rules of Appellate Procedure's briefing requirements, and has thus, waived her issues. For the reasons discussed below, we affirm the trial

court's judgment, except as to appellate attorney's fees. Since we conclude that the evidence is insufficient to support $300,000.00 for appellate attorney's fees, we sustain issues ninety-four and ninety-five in part. Thus, should Nechayuk timely accept our suggested remittitur of $145,000.00, we will reform the trial court's judgment and affirm the judgment as reformed. Should Nechayuk reject the remittitur, we will reverse and remand for a new trial only on the issue of appellate attorney's fees.

## I. INITIAL MATTERS: THE RECORD AND WAIVER

Since September 18, 2018, Telegina has acted pro se. Despite the trial court's September 12, 2018 ruling determining that the parties were divorced in August 2017, she persisted in filing pleadings, motions, and discovery about claims the trial court had already disposed of previously. The filings often spanned over a hundred pages, and she repeatedly moved for "reconsideration" of the trial court's rulings. Telegina also filed two petitions for writ of mandamus in this Court, which we denied. *See In re Telegina*, No. 09-22-00162-CV, 2022 WL 2719709, at *1 (Tex. App.—Beaumont July 14, 2022, orig. proceeding) (mem. op.) (complaining of the trial court's denial of her request to depose Nechayuk and his attorney on the issue of attorney's fees); *In re Telegina*, No. 09-19-00133-CV, 2019 WL 1976481, at *1 (Tex. App.—Beaumont May 2, 2019, orig. proceeding) (mem. op.) (complaining of the trial court's granting of temporary protective orders limiting the discovery to: the

3

validity of the parties' marital settlement agreement; claims that Nechayuk violated the settlement agreement; and claims for partition of undivided marital assets).

The Clerk's Record in this appeal spans twenty-three volumes, one supplemental volume, and exceeds 39,000 pages.[1] The Reporter's Record includes twelve volumes and one supplemental volume. Telegina's Brief raises what she labels as "102 issues," contains no citations to the record other than referencing the dates motions or orders were filed, and in support of each of her points, she "incorporates by reference" legal arguments she made in trial court filings. She also fails to explain how she preserved error on each of her issues.

Generally, we liberally construe an appellant's pro se brief. *See Giddens v. Brooks*, 92 S.W.3d 878, 880 (Tex. App.—Beaumont 2002, pet. denied) ("pro se

---

[1]At one point, the trial court described the state of the record in this matter as follows:

> Over the span of 5 years of litigation in this court the Petitioner has represented herself *pro se* for a large majority of the time. She has filed 6 amended petitions, 3 motions to recuse the trial judge, at least 5 motions to hold the opposing party in contempt and has unsuccessfully sought a writ of mandamus from an appellate court. After two motions to recuse the trial judge were denied, the trial judge voluntarily recused herself in October 2020 after the filing of the third motion to recuse her. The undersigned judge was assigned to preside and has presided over the case since that time. As of January 24, 2023 the clerk's file for this case contains 862 documents that include 44,189 pages, the large majority of which have been filed by Petitioner. It is the most voluminous civil file among active or disposed cases filed in Montgomery County since January 1, 2017. It is over 1.5 times larger than the next largest file.

pleadings and briefs are to be liberally construed[]"); *see also Senegal v. Mr. Transmission*, No. 09-22-00377-CV, 2023 WL 6631943, at *3 (Tex. App.—Beaumont Oct. 12, 2023, pet. denied) (mem. op.) (same). Still, a pro se litigant must comply with applicable laws and rules of procedure and is held to the same standards as licensed attorneys. *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978); *see Senegal*, 2023 WL 6631943, at *3. "The brief must articulate the issues we are to decide, and it fails to comply with the rules if we must speculate or guess about the appellant's issues." *Senegal*, 2023 WL 6631943, at *3 (citing *Golden v. Milstead Towing & Storage*, Nos. 09-21-00044-CV, 09-21-00045-CV, 2022 WL 1412303, at *2 (Tex. App.—Beaumont May 5, 2022, no pet.) (mem. op.)). We do not (1) advocate for any parties, (2) search the record to identify possible or unassigned trial court error, or (3) search for facts or legal authorities that may support a party's position. *See Senegal*, 2023 WL 6631943, at *3; *Golden*, 2022 WL 1412303, at *2.

The Texas Rules of Appellate Procedure require that an appellant's brief include a statement of facts that "must be supported by record references." Tex. R. App. P. 38.1(g). Additionally, an appellant's "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." *Id.* at 38.1(i); *see also Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 732 (Tex. 2020). "However, briefs must also 'be liberally,

but reasonably, construed so that the right to appeal is not lost by waiver.'" *Lion Polymers*, 614 S.W.3d at 732 (citing *Horton v. Stovall*, 591 S.W.3d 567, 569 (Tex. 2019) (per curiam)). We hesitate to resolve cases based on procedural defects, rather we try to resolve cases on the merits. *See id.* (citation omitted). We must look not only at the wording of parties' issues, "but also the arguments, evidence, and citations relied on by those parties to determine which issues the parties intended to and actually briefed." *Id.* (citing *St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 214 (Tex. 2020) (per curiam)). Even so, it is not the appellate court's duty to scour through a voluminous record and find facts to support a party's position. *See Lowry v. Tarbox*, 537 S.W.3d 599, 620 (Tex. App.—San Antonio 2017, pet. denied) ("When appellants fail to discuss the evidence supporting their claim or apply the law to the facts, they present nothing for review."); *Dunn v. Bank-Tec South*, 134 S.W.3d 315, 328 (Tex. App.—Amarillo 2003, no pet.) (explaining it is not appellate court's duty to search for evidence that supports a party's contention in a multi-volume trial record).

An appellant does not satisfy the appellate briefing requirements by simply incorporating by reference the argument and analysis she presented in the trial court into her appellant's brief. *See Balderas as Next Friend of Balderas v. Hous. Foam Plastics, Inc.*, No. 01-20-00755-CV, 2022 WL 17254954, at *9 (Tex. App.—Houston [1st Dist.] Nov. 29, 2022, no pet.) (mem. op.); *Allen v. United of Omaha*

6

*Life Ins.,* 236 S.W.3d 315, 325 (Tex. App.—Fort Worth 2007, pet. denied); *see also Khan v. Safeco Surplus Lines*, No. 14-13-00024-CV, 2014 WL 3907976, at *5–6 (Tex. App.—Houston [14th Dist.] Aug. 12, 2014, pet. denied) (mem. op.) (holding appellant's briefing was inadequate and appellant could not incorporate by reference into his appellant's brief the argument and authorities from his summary-judgment response in the trial court).

Engaging in a review of this voluminous record without adequate record citations is almost impossible. *See Senegal*, 2023 WL 6631943, at *3 (explaining that we do not search the record to identify possible trial court error or for facts or legal authority's that may support a party's position); *Golden*, 2022 WL 1412303, at *2. That said, after liberally construing her brief, it appears Telegina's complaints relate to the trial court's Rule 308b Order, partial summary judgment orders, and Final Judgment and depend on whether: (1) the parties obtained a valid divorce from the Russian Consulate based on the parties' Dissolution Agreement and Prenuptial Agreement; (2) the parties had any community property that required post-divorce division; and (3) whether Telegina has a cause of action against Nechayuk for breaching the Dissolution Agreement or Prenuptial Agreement. *See Lion Polymers*, 614 S.W.3d at 732; *Senegal*, 2023 WL 6631943, at *3; *Golden*, 2022 WL 1412303, at *2. We endeavor to reach the merits of these questions central to Telegina's appeal. *See Lion Polymers*, 614 S.W.3d at 732. That said, because Telegina has

7

failed to provide this Court with adequate citations to the record and legal authority with argument for how it supports her other stated issues, we conclude that she has waived all other issues due to inadequate briefing. *See* Tex. R. App. P. 38.1(g), (i).

## II. BACKGROUND

### A. The Parties' Relationship and Prenuptial Agreement

On August 12, 2010, Russian citizens Telegina and Nechayuk, entered into a Prenuptial Agreement governing aspects of their property during marriage, which included a provision characterizing each party's earnings during the marriage as each person's separate property. Among other things, the Prenuptial Agreement provided that passive income shall retain the character from which it is derived, and passive income earned on separate property after the marriage remained separate property. Applicable provisions from the Prenuptial Agreement include:

> WHEREAS, neither party has consulted with an attorney concerning this agreement prior to entering into it;
> WHEREAS both parties acknowledge that they have read and understand this agreement, have not been subjected to any form of coercion, duress or pressure, and believe this agreement to be fair and to represent their intentions with regards to their relationship, assets and to any estate that shall result from their marriage;
> . . .
>
> II. **Separate Property.**
> A. Definition of "Separate Property". As used in this agreement, the term "Separate Property" means all rights and interests in property of any kind, including contingent interests, owned by each party on the effective date of this agreement. The term "Separate Property", as used in this agreement, is further defined below.

8

B. **Earnings After Effective Date of Agreement Also Separate Property.**

1. Earnings During Marriage - Passive Income. Passive income derived from property of any type shall have the same character for purposes of this agreement as the property from which it is derived. Thus, passive income from Separate Property earned or accruing after the effective date of this agreement -shall be the Separate Property of the owner of that asset. The term "passive income" means dividends, capital gains, interest, rents, royalties, disruptions and other income accrued from property of a party and obtained after the effective date of this agreement.

. . .

2. Earnings During Marriage – Earned Income

Earned income of the parties during the marriage shall be considered the Separate property.

a.

The term "earned income" means any income obtained by a party after the effective date of [t]his agreement that does not meet the definition of passive income as set forth in the previous section. Types of earned income include, but are not limited to, salary and bonus from employment, earnings derived from the performance of services as an independent contractor, and income derived from a business run as a sole proprietorship.

. . .

5. Separate Property shall include substitutions and exchanges for such property now in existence, and any proceeds there from, [sic] and from any income derived from such Separate Property, and any property purchased from the proceeds or income from such property.

6. Separate property shall also include gifts or inheritances one party receives from a third party after the effective date of this agreement.

. . .

8. Contributions and accumulations in retirement plans and accounts: In regard to retirement plans and accounts, the parties covenant and agree that all accumulations in, and contributions to, retirement plans

and accounts whether before or during the marriage shall be the Separate Property of the party who owns the account or is the plan beneficiary.

C. Waiver of Rights and Claims to Separate Property. Except as otherwise provided herein, each party waives and releases all rights, interests in and claims to the Separate Property of the other party arising under common or statutory law of any jurisdiction (present or future).

The Prenuptial Agreement prohibited adultery and had two "Annexes" the parties executed that required payment of $50,000 if either party contacted individuals from a "persona non grata" list. On August 13, 2010, Telegina and Nechayuk married at the Consulate General of Russia in Houston, Texas.

### B. Russian Divorce and "Marital Settlement Agreement for Dissolution of Marriage"

On July 21, 2017, both parties signed a "Marital Settlement Agreement for Dissolution of Marriage" ("Dissolution Agreement"). Later the same day, the parties went together and filed a joint application for divorce with the Russian Consulate in Houston Texas.

The Dissolution Agreement contained the following provisions:

B. Because of irreconcilable differences PARTIES have made a joint decision to dissolve the marriage by filing an appropriate application with the General Consulate of Russian Federation in Houston;
C. PARTIES have made this agreement to settle once and for all what each of the PARTIES owes to and will expect from the other PARTY;
D. The prenuptial agreement entered by the PARTIES on July 12, 2010, including all its Amendments entered on July 12, 2010 and February 17, 2011, is hereby terminated and rendered null and void without any consequences under any of the Prenuptial agreement provisions and its Amendments for any of the PARTIES, except Section II (Private

10

Property), Section III (Alimony), Section VI (Waiver of Rights Upon Death), Section VI (Debts)

E. On the date of official dissolution of the marriage as certified by the Certificate of dissolution of marriage issued by the Consulate General of Russian Federation in Houston, the PARTIES will assume responsibilities as specified below Section III of this Agreement. The list of responsibilities provided in this Agreement is exhaustive and no other responsibility resulting from the marriage or dissolution of the marriage will be assumed by any of the PARTIES unless agreed by both PARTIES in writing and attached to this Agreement as unalienable amendment[.]

Section III of the Dissolution Agreement then states that Nechayuk would pay Telegina a total of $340,000 in five installments over the four years following the divorce. The first payment was for $100,000 and to be paid within a week after the Russian Consulate issued the Certificate of Dissolution of Marriage. The remaining four payments would be once a year for the next four years in equal amounts of $60,000. The Dissolution Agreement added that the "PARTIES will restrain from collecting information or interfering with each other's life, including immediate relatives and known associates directly or through third parties, unless explicitly requested or authorized by the other party."

On August 22, 2017, the parties received their Divorce Certificate from the Consulate General of Russia in Houston, Texas. The Divorce Certificate stated that they filed their "joint application" for divorce on July 21, 2017, and the marriage between Nechayuk and Telegina was terminated on August 22, 2017.

## C. Telegina's Divorce Petition and Proceedings in Montgomery County

Less than three months later, in Montgomery County Court at Law, Telegina filed her "Original Petition for Divorce" requesting a divorce. In March 2018, Nechayuk filed his "Plea to the Jurisdiction, Motion to Dismiss, and Original Answer" (hereinafter Answer). In his Answer, Nechayuk argues there was a Prenuptial Agreement, and the parties entered into a Dissolution Agreement. He also argues that the parties were already divorced by the Russian Consulate as of August 22, 2017, and no justiciable interest exists, so the case is moot. Nechayuk asserts that there is no subject matter jurisdiction since Telegina is seeking a divorce, but the parties are already divorced. Shortly thereafter, and "subject to and without waiving" his Plea to the Jurisdiction, Nechayuk filed a "Counterpetition for Divorce" arguing that their marriage was registered with Russian Consulate in Houston on August 13, 2010, and they divorced through the Russian Consulate. With his Counterpetition, he attached the Dissolution Agreement and Prenuptial Agreement. Ten days after filing his Plea to the Jurisdiction and Original Answer, Nechayuk filed his "Notice of Foreign Law" attaching Russian statutes applicable to divorce proceedings. He asserted the parties obtained an agreed Russian divorce finalized at the Consulate General of Russia in Houston, Texas on August 22, 2017, under Russian law. He attached the laws regarding divorce in Russia, which allow for a nonjudicial divorce process.

After Nechayuk filed his Plea to the Jurisdiction, Motion to Dismiss, and Answer, Telegina filed her "Second Amended Petition for Divorce" in April 2018. In that pleading, she claims there is undivided marital property subject to division, and she asserts causes of action for bodily injury, intentional infliction of emotional distress, and breach of contract.

The parties later filed an "Agreed Texas Rule of Civil Procedure 308b Scheduling Order" setting the 308b hearing for August 30, 2018. *See generally* Tex. R. Civ. P. 308b. The parties also entered into a Rule 11 agreement, which provided "the Court may consider the expert affidavits/reports submitted by the parties, whether or not admissible, in accordance with TRE203(c)." "The parties agreed to submit translated documents, statutes and expert reports."

We have a complete Reporter's Record of this hearing and the evidence admitted at the hearing. Evidence admitted at the hearing includes: the translated "Divorce Certificate" from the Russian Consulate with translator's certificate; the Dissolution Agreement; a translated Russian statute with translator's certificate providing that "[u]pon mutual consent of spouses who do not have common minor children, divorce shall be performed in vital records bodies[,]" and the "[d]ivorce and issuance of the divorce certificate shall be performed by a vital records body upon the expiration of a one month period starting from the date of application for divorce[;]" a certified translated statute providing that divorces between Russian

13

citizens living abroad and eligible to have their marriages dissolved in vital records bodies under Russian law, may have their marriage "dissolved in . . .consulates of the Russian Federation;" and affidavits of Russian family lawyer Liudmila Iablokova discussing the applicable Russian statutes.

The trial court's "Order and Findings from TRCP308(b)-(f) Hearing" shows that it also heard Nechayuk's Plea to the Jurisdiction at the same time. This Order included the trial court's detailed findings, including that "the parties complied with the requirements of Russian law in obtaining their administrative divorce from the Russian Consulate" and "were divorced on August 22, 2017." The trial court also found,

11. Both parties voluntarily traveled together to the Russian Consulate in Houston after negotiating and drafting a property settlement for their divorce. Both parties knowingly and freely signed the divorce papers and property settlement papers at the Russian Consulate on July 21, 2017, and both acknowledged their intent to divorce, in writing, at the Russian Consulate. Both parties filed a joint application for divorce at the Russian Consulate. Telegina was aware that court processes were available to her, both in Russia and in the state courts in Texas, to resolve their divorce but she voluntarily chose to proceed with, and to finalize their divorce, pursuant to the Russian administrative divorce process. Therefore, Telegina's rights to due process were not violated.

12. The Russian administrative divorce process did not violate Telegina's right to due process.

The court also found that Telegina failed to demonstrate that the Russian divorce violated Texas public policy.

Although the trial court determined the divorce from the Russian Consulate was valid and the parties were already divorced, Telegina proceeded with her claims for post-divorce division of marital assets, breach of contract, and intentional infliction of emotional distress and bodily injury. Nechayuk filed a no-evidence motion for summary judgment and traditional motion for summary judgment as to those claims. In his motion for summary judgment, Nechayuk asserted that the Dissolution Agreement settled all matters related to the divorce, and its terms showed there were no unresolved issues and no evidence of any undivided property. He also argued that the Dissolution Agreement stated that certain provisions in the Premarital Agreement remained effective, including a provision that designated everything as each spouse's separate property such that there was no community property acquired during the marriage.

Telegina served Nechayuk with discovery requests, noticed his deposition, and filed multiple motions to compel. In essence, Telegina asserted that although they were divorced, the Russian divorce did not divide the marital property; that the property division was left for the courts, and she contested the validity of the Dissolution Agreement. Nechayuk resisted discovery of any matters beyond whether the Dissolution Agreement was valid and whether Telegina released all her claims arising from the marriage and divorce by signing that Agreement. He sought protection from discovery on that basis. Telegina, in turn, countered that she could

not adequately respond to the motions for summary judgment without discovery. Nechayuk moved for a protective order, and in November 2018, the trial court held a hearing on several pending motions, including Telegina's multiple motions to compel and motions for sanctions.

The trial court limited its initial determination to whether the Dissolution Agreement was valid and whether Telegina released any claims arising from the marriage. The trial court likewise restricted discovery to the validity of the Agreement and to Nechayuk's alleged breach of that agreement. The trial court allowed Telegina to depose Nechayuk on those limited matters, although it later noted that determining whether Telegina was precluded as a matter of law from bringing independent claims did not require his deposition. The trial court also ruled that it would not require Nechayuk to produce an inventory, as the parties were already divorced, and if the Dissolution Agreement was valid and Telegina released all claims by signing it, then there was no need for Nechayuk to provide an inventory. At the November hearing, the trial court informed the parties it would rule on the initial matter of the Dissolution Agreement's validity and Telegina's release of all claims and would delay ruling on the other grounds in the motions for summary judgment. The trial court extended Telegina's deadline to respond to the traditional motion for summary judgment until November 26, 2018, focusing on the sole issue of whether the Dissolution Agreement and release language precludes her from

bringing independent claims. The trial court explained that the only matter it would address when considering the pending motions for summary judgment would be whether Telegina was prevented as a matter of law from bringing independent claims.

On December 12, 2018, the trial court signed an "Order Granting Partial Summary Judgment" in favor of Nechayuk as to Telegina's claims of bodily injury and intentional infliction of emotional distress. The trial court specified that it considered Nechayuk's Traditional Motion for Summary Judgment and Telegina's Response. The Order included a finding "that by executing the Marital Settlement Agreement for Dissolution of Marriage, Telegina released Nechayuk from any claim for bodily injury and intentional infliction of emotional distress[,]" and granted the partial judgment for Nechayuk on those claims.

The trial court, however, allowed Telegina to proceed with her claims for post-divorce property division, breach of the Dissolution Agreement, and breach of the Prenuptial Agreement. Over the ensuing months, there were protracted disputes over discovery and its scope. Nechayuk maintained that the only relevant materials were the Dissolution Agreement and Prenuptial Agreement, and discovery should be limited to the validity of those agreements. Nechayuk contended that threshold matter should be determined, since if the agreements were determined valid, there was no community property.

In contrast, Telegina sought a wide range of discovery about Nechayuk's alleged mistresses and retirement benefits, among other things. Telegina also repeatedly filed voluminous motions with exhibits that regularly consisted of over one hundred pages and requested sanctions on multiple occasions. Telegina ultimately deposed Nechayuk and questioned him about their agreements, along with the circumstances surrounding the parties seeking a divorce through the Russian Consulate.

Nechayuk filed several other motions for summary judgment addressing Telegina's pending claims for post-divorce division of property and breach of the Dissolution Agreement and Prenuptial Agreement, which the trial court did not grant. Ultimately, in an order signed March 5, 2021, the trial court granted Nechayuk's Motion for Summary Judgment filed on December 23, 2020, which addressed the Dissolution Agreement's and Prenuptial Agreement's enforceability, post-divorce division of property, and certain breaches of the Dissolution Agreement and Prenuptial Agreement. On March 5, 2021, the trial court dismissed Telegina's sole remaining claim for breach of the Dissolution Agreement after repeatedly sustaining Nechayuk's special exceptions when she failed to comply with the court's orders that she replead to cure defects in her petitions.

## III. ANALYSIS

### A. Principles of Comity and Validity of Russian Divorce

We first determine whether the trial court properly recognized the parties' divorce obtained from the Russian Consulate, as Telegina challenges the trial court's recognition of the Russian divorce in issues three, five, eighty, eighty-three, and eighty-four. She seems to assert that the trial court erred in recognizing the Russian divorce, because: (1) the parties lived in Texas; (2) she was denied due process; and (3) it was against public policy.

After a hearing, which included the parties' testimony and consideration of the expert's affidavits, the trial court dismissed Telegina's divorce action based on Rule 308b, which allows the trial court the discretion to recognize a foreign judgment based on comity. *See id.* 308b(a), (b). At the Rule 308b hearing, the trial court characterized the issue before it as whether it had jurisdiction, and the scope of the hearing was "whether or not this Russian divorce denied either of these parties constitutional protections or [was] against public policy."

### 1. Standard of Review and Applicable Law

A court must have subject-matter jurisdiction to have authority to decide a case. *In re Marriage of Sabir and Javed*, No. 05-23-00837-CV, 2024 WL 3507200, at *2 (Tex. App.—Dallas July 23, 2024, no pet.) (mem. op.) (stating same in context of foreign divorce determination). Subject matter jurisdiction is never presumed and

19

cannot be waived. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993); *see also Marriage of Sabir*, 2024 WL 3507200, at *2 (citing *Ashfaq v. Ashfaq*, 467 S.W.3d 539, 541 (Tex. App.—Houston [1st Dist.] 2015, no pet.)). We review de novo questions implicating a court's subject matter jurisdiction. *See In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018); *In re J.W.W.*, No. 09-23-00292-CV, 2024 WL 630869, at *9 (Tex. App.—Beaumont Feb. 15, 2024, pet. denied) (mem. op.).

At issue here is whether the trial court had the authority to recognize the Russian divorce based on principles of comity. *See* Tex. R. Civ. P. 308b. Since states "are not required to give full faith and credit to foreign country judgments; dismissal based on comity is a matter of discretion." *Ashfaq*, 467 S.W.3d at 541 (citations omitted); *see also Marriage of Sabir*, 2024 WL 3507200, at *2; *Acain v. Int'l Plant Servs., LLC*, 449 S.W.3d 655, 659 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (discussing principles of comity and standard of review). Thus, we review the trial court's order recognizing the Russian divorce for abuse of discretion. *See Marriage of Sabir*, 2024 WL 3507200, at *2; *Ashfaq*, 467 S.W.3d at 541; *Acain*, 449 S.W.3d at 659. A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *Ashfaq*, 467 S.W.3d at 541.

When, as here, the parties tried issues to the bench, the trial court acts as the factfinder and determines the witnesses' credibility and weight to be given their

20

testimony. *See Estate of Wright*, No. 09-18-00227-CV, 2020 WL 1173701, at *4 (Tex. App.—Beaumont Mar. 12, 2020, no pet.) (mem. op.) (discussing same in context of motion for new trial); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *Ashfaq*, 467 S.W.3d at 542. In resolving factual disputes, the trial court may resolve any inconsistencies in a witness's testimony. *See City of Keller*, 168 S.W.3d at 820; *Estate of Wright*, 2020 WL 1173701, at *4; *Ashfaq*, 467 S.W.3d at 542. As to factual disputes, a trial court does not abuse its discretion "if it bases its decision on conflicting evidence and some evidence supports its decision." *See Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009) (citation omitted); *Ashfaq*, 467 S.W.3d at 542 (citation omitted).

**2. Application**

We now turn to the three reasons Telegina argues should have precluded the trial court from recognizing the Russian divorce: domicile; public policy; and due process. We take each of these in turn.

**a. Domicile**

We first address Telegina's contention that the parties were domiciled in Texas. "Texas courts treat foreign law as a fact issue." *Ashfaq*, 467 S.W.3d at 542 (citing *Nguyen v. Nguyen,* 355 S.W.3d 82, 89 (Tex. App.—Houston [1st Dist.] 2011, pet. denied)). A party relying on foreign law must strictly plead and prove the law. *Id.*; *see also* Tex. R. Evid. 203 (requiring party who intends to raise issue about

law of foreign country to give notice by pleadings or other writing and supply to all parties copies of any written materials that party intends to use at least 30 days before trial); Tex. R. Civ. P. 308b (governing trial court proceedings for recognizing foreign judgments).

Nechayuk adduced evidence that Russian law allowed Russian citizens residing abroad to obtain an administrative divorce through the Russian Consulate if they had no children or property disputes. They have no children, and they are Russian citizens living in Texas. The trial court took judicial notice of Russian law permitting an administrative divorce process and found the parties complied with Russian law in obtaining their administrative divorce from the Russian Consulate. The trial court found that the parties had the option of obtaining their divorce this way or through the courts, either in Russia or in Texas. This was supported by the Russian statutes, and the affidavit testimony of Nechayuk's expert. The trial court also considered affidavit testimony of Vitaliy Nakrhratov, Telegina's expert, who asserted that the administrative divorce was not available to the parties given a property dispute. Nechayuk's expert opined that the parties' divorce was "valid and recognized in Russia." Telegina's expert opined that there was no valid property division, the spouses did not divide their property, and "the Russian Federation administrative process for divorce was neither applicable nor shown to have been followed. In a rebuttal affidavit, Nechayuk's expert likewise testified that the parties

were only eligible for divorce if they did not have children and "did not have any disputes in regards to their common marital property." Further, Nechayuk's expert noted that she reviewed the Dissolution Agreement and Prenuptial Agreement, which were evidence no property dispute existed when the parties' divorced.

The trial court was free to weigh this evidence and determine that Iablakova's testimony, the statutes, and the parties' agreements stating they settled their property disputes established the administrative divorce was available and valid. *See Ashfaq*, 467 S.W.3d at 542. Based on the record, we conclude the trial court did not abuse its discretion when it rejected Telegina's argument that the parties' domicile in Texas prevented it from recognizing the Russian divorce.

**b. Public Policy**

We next turn to whether the trial court's recognition of the parties' Russian divorce violated Texas public policy, as the trial court found that Telegina failed to demonstrate a violation of Texas public policy. "[A] court need not enforce a foreign law if enforcement would be contrary to Texas public policy." *Larchmont Farms, Inc. v. Parra*, 941 S.W.2d 93, 95 (Tex. 1997) (per curiam) (citations omitted) (stating rule in the context of a workers' compensation appeal). "To promote the amicable settlement of disputes in a suit for divorce[,]" the Texas Family Code expressly allows for agreements "concerning the division of property and liabilities of the spouses and maintenance of either spouse." Tex. Fam. Code Ann. § 7.006(a).

23

In her brief, Telegina generally complains that the United States has sanctioned Russia and characterized Russia as the United States' "biggest global rival[.]" That said, she does not explain how the trial court's recognition of a divorce the parties sought jointly at the Russian Consulate violates any public policy of the State of Texas. Liberally construing her brief, she argues that allowing Russia to grant divorces on United States soil is problematic and that the Russian divorce fails to divide the parties' property. Again, she does not explain how it is against public policy for two citizens of Russia who voluntarily apply for a divorce certificate and receive one violates Texas public policy.

The trial court found the parties entered a Dissolution Agreement, which was admitted into evidence at the 308b hearing, and the trial court made findings consistent with that Dissolution Agreement. Based on this record, the trial court could have reasonably concluded that recognizing the parties' administrative divorce through the Russian Consulate based on the parties' decision to jointly apply for the divorce at the Russian Consulate coupled with their signed Dissolution Agreement and Prenuptial Agreement promoted the amicable settlement of this divorce. *See id.* Thus, the trial court did not abuse its discretion when it rejected Telegina's arguments that recognizing the Russian divorce violated public policy.

**c. Due Process**

We next address Telegina's due process complaint. Telegina contends that the Russian divorce violated her constitutional right to due process. "Recognition of a foreign judgment in the absence of due process constitutes an abuse of discretion." *In re Marriage of Sabir*, 2024 WL 3507200, at *2 (citation omitted); *Ashfaq*, 467 S.W.3d at 541 (citations omitted). "'[D]ue process requires that no other jurisdiction shall give effect, even as a matter of comity, to a judgment elsewhere acquired without due process.'" *Ashfaq*, 467 S.W.3d at 541 (quoting *Griffin v. Griffin*, 327 U.S. 220, 228 (1946)). "Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Mosley v. Tex. Health and Hum. Servs. Comm'n*, 593 S.W.3d 250, 265 (Tex. 2019) (citation omitted); *In re Marriage of Sabir*, 2024 WL 3507200, at *2 (citation omitted); *see also Glawson v. Polk Cnty. Bail Bond Bd.*, 654 S.W.3d 763, 771 (Tex. App.—Beaumont 2022, pet. denied).

Besides finding that the parties complied with Russian law in obtaining their administrative divorce from the Russian Consulate, the trial court determined,

> Both parties voluntarily traveled together to the Russian Consulate in Houston after negotiating and drafting a property settlement for their divorce. Both parties knowingly and freely signed the divorce papers and property settlement papers at the Russian Consulate on July 21, 2017, and both acknowledged their intent to divorce, in writing at the Russian Consulate. Telegina was aware that court processes were available to her both in Russia and in state courts in Texas, to resolve their divorce, but she proceed with, and to finalize their divorce,

25

pursuant to the Russian administrative divorce process. Therefore, Telegina's rights to due process were not violated.

The record supports the trial court's finding and this determination.

Nechayuk testified that the parties discussed two options for divorce, (1) U.S. courts or (2) the Russian Consulate. He explained that Telegina said, "One option is to go to the U.S. court and litigate and it would be much worse for me than I would agree to her conditions and we would get the Russian divorce." Telegina testified that on July 21, 2017, she went with her husband to the Russian Consulate to discuss divorce, but she denied seeing or signing the joint application. Telegina testified that they returned to the Russian Consulate on August 22, 2017, and they received their divorce certificate. She also testified that she signed the Dissolution Agreement, initialed each page, intended to abide by the document, and she agreed to the things in the document. She also testified that she did not return the first $100,000 payment Nechayuk made under the Dissolution Agreement. We give deference to the factfinder's role in judging the witnesses' credibility and resolving conflicts in the evidence. *See City of Keller*, 168 S.W.3d at 820; *Estate of Wright*, 2020 WL 1173701, at \*4; *Ashfaq*, 467 S.W.3d at 541–42; *see also Villa*, 299 S.W.3d at 97 (in context of sanctions explaining that trial court does not abuse its discretion of it bases its decision on conflicting evidence and some supports its decision).

Based on the evidence presented to the trial court, the trial court could have reasonably determined that Telegina had notice of the administrative Russian

divorce proceeding, as she participated in the decision to pursue it and negotiating the Dissolution Agreement. The evidence also establishes that Telegina knew she could pursue a divorce through the court system but elected to obtain an administrative Russian divorce. Since the record supports that the parties chose to proceed with the Russian divorce and filed a joint application to do so, Telegina had notice "and an opportunity to be heard at a meaningful time and in a meaningful manner." *Mosley*, 593 S.W.3d at 265; *In re Marriage of Sabir*, 2024 WL 3507200, at *2 (citation omitted); *Ashfaq*, 467 S.W.3d at 541. Accordingly, we conclude the trial court did not abuse its discretion when it determined the Russian divorce did not violate Telegina's right to due process.

We overrule issues one, three, five, eighty, eighty-three, and eighty-four.

## B. Summary Judgment: Post-Divorce Division Claims and Alleged Breaches of Dissolution Agreement and Prenuptial Agreement

Once the trial court determined the Russian divorce was valid and the parties were already divorced, Telegina's remaining claims depended on the validity of the Dissolution Agreement and Prenuptial Agreement and whether those agreements foreclosed the possibility of her other claims. Those claims included post-divorce division of property and alleged breaches of the parties' Dissolution Agreement and Prenuptial Agreement. We consider these points as part of issues ten and twenty.

On December 23, 2020, Nechayuk filed another traditional Motion for Summary Judgment. In his Motion for Summary Judgment, Nechayuk asserts the

27

parties' Prenuptial Agreement and Dissolution Agreement are valid and enforceable and resolve all property issues between the parties. Specifically, he contends that she made a judicial admission in her live pleading that the Dissolution Agreement is valid and enforceable. He also asserts that Telegina waived any claim that he breached the Prenuptial Agreement when she executed the subsequent Dissolution Agreement. Finally, he argues that Telegina's claim that he breached the Dissolution Agreement is not viable. His summary judgment evidence includes: Prenuptial Agreement; Marital Settlement Agreement for Dissolution of Marriage; excerpts of testimony from August 30, 2018 hearing; "Order and Findings from TRCP308(b)-(f) Hearing;" and "Order on Petitioner's Motion for Partial Summary Judgment on the Prenuptial Agreement and Marital Settlement Agreement."

Telegina filed her "Response to Resp[o]ndent's Motion for Summary Judgment," and argues that the Dissolution Agreement and Prenuptial Agreement are ambiguous, and the ambiguity creates a fact issue which precludes summary judgment. She also contends that the Prenuptial Agreement was unenforceable as it was ambiguous, not voluntarily executed, was unconscionable and signed without adequate disclosures.

On March 5, 2021, the trial court signed an order granting Nechayuk's Motion for Summary Judgment filed on December 23, 2020. The Order states it renders judgment on all Telegina's claims except her claim that Nechayuk breached the

28

Dissolution Agreement by "collecting information on or interfering with [Telegina's] life." It also left open Nechayuk's claim for reasonable and necessary attorney's fees to defend the suit.

**1. Standards of Review and Applicable Law**

We review a trial court's grant of a traditional summary judgment de novo. *Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022) (citation omitted). The moving party has the burden to show with competent summary judgment evidence that no genuine issue of material fact exists, and it is entitled to summary judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c) (setting forth standard for traditional summary judgment); *Zive*, 644 S.W.3d at 173. On appeal, we review the summary judgment record "in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *City of Keller*, 168 S.W.3d at 824; *see also Zive*, 644 S.W.3d at 173 (citation omitted).

Summary judgment for a defendant is proper if the defendant negates at least one element of each of the plaintiff's theories of recovery or pleads and conclusively establishes each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997); *see also Henkel v. Norman*, 441 S.W.3d 249, 251 (Tex. 2014) (citation omitted) ("A traditional summary judgment motion is properly granted where a defendant conclusively negates at least one essential element of a cause of action."). With a traditional motion for summary judgment, only if the

movant meets their burden of conclusively negating an essential element of a cause of action does the burden shift to the nonmovant to present evidence raising a genuine issue of material fact. *See Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 514 (Tex. 2022) (citing *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018)) (other citations omitted); *see also* Tex. R. Civ. P. 166a(c). When a trial court grants summary judgment without specifying the basis, we affirm if any of the movant's theories has merit. *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

To be enforceable, "a premarital agreement must be in writing and signed by both parties." Tex. Fam. Code Ann. § 4.002. Likewise, spouses may enter into marital property agreements partitioning their existing and future property, which must be in writing and signed by both parties. *See id.* §§ 4.102, 4.103, 4.105. For either agreement to be unenforceable, a party must prove:

> (1) the party did not sign the agreement voluntarily; or
> (2) the agreement was unconscionable when it was signed and, before execution of the agreement, that party:
>    (A) was not provided a fair and reasonable disclosure of the property or financial obligations of the other party;
>    (B) did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; and
>    (C) did not have, or reasonably could not have had, adequate knowledge of the property or financial obligations of the other party.

*Id.* §§ 4.006(a), 4.105(a). The issue of unconscionability is a question of law for the court. *See id.* §§ 4.006(b), 4.105(b). "Because disclosure forms the second prong of

the test to rebut the presumption of enforceability, lack of disclosure is material only if the premarital agreement is unconscionable." *Marsh v. Marsh*, 949 S.W.2d 734, 743 (Tex. App.—Houston [14th Dist.] 1997, no writ) (citation omitted); *see* Tex. Fam. Code Ann. §§ 4.006(a), 4.105(a). The burden is on the party seeking to avoid enforcement of the agreement to establish these things. *See* Tex. Fam. Code Ann. §§ 4.006(a), 4.105(a).

To determine whether a contract is unconscionable, courts consider the circumstances in which the agreement was made, including "'the alternatives, if any, which were available to the parties at the time of the making of the contract; the non-bargaining ability of one party; whether the contract is illegal or against public policy, and, whether the contract is oppressive or unreasonable.'" *Marsh*, 949 S.W.2d at 739 (quoting *Wade v. Austin*, 524 S.W.2d 79, 86 (Tex. Civ. App.—Texarkana 1975, no writ)). In considering whether a premarital agreement or marital property agreement is unconscionable, courts have considered factors like the maturity and age of the individuals, their business backgrounds, their educational levels, prior marriages, and other motivations. *See id.* at 741; *see also In re Marriage of A.M.H.*, No. 14-17-00908-CV, 2019 WL 4419195, at *4 (Tex. App.—Houston [14th Dist.] Sept. 17, 2019, no pet.) (mem. op.) (citation omitted) (addressing prenuptial agreement); *In re Marriage of Smith*, 115 S.W.3d 126, 135 (Tex. App.—Texarkana 2003, pet. denied) (addressing marital property agreement). Generally,

31

"the term 'unconscionable' describes a contract that is unfair because of its overall one-sidedness or the gross one-sidedness of its terms." *In re Marriage of Smith*, 115 S.W.3d at 135 (citation omitted). "'[T]he fact that a bargain is a hard one does not entitle a party to be relieved therefrom if he assumed it fairly and voluntarily.'" *Id.* (citing *Wade*, 524 S.W.2d at 86); *Marsh*, 949 S.W.2d at 739, 741 (explaining that the fact premarital agreement was signed shortly before the wedding does not make it unconscionable).

"Texas has a 'strong public policy freedom of contract' that is 'firmly embedded in our jurisprudence.'" *In re Marriage of I.C. and Q.C.*, 551 S.W.3d 119, 124 (Tex. 2018) (quoting *Philadelphia Indem. Ins. Co. v. White*, 490 S.W.3d 468, 471 (Tex. 2016)). Texas law recognizes that parties "'shall have the utmost liberty of contracting,'" and that contracts entered "'freely and voluntarily shall be held sacred and shall be enforced by [c]ourts.'" *Id.* (quoting *Gym-N-I Playgrounds, Inc. v. Snider*, 220 S.W.3d 905, 912 (Tex. 2007)). This public policy favoring enforcement of contracts includes agreements directly affecting the division of property acquired during marriage. *See, e.g., Beck v. Beck*, 814 S.W.2d 745, 749 (Tex. 1991) (enforcing premarital agreement providing that income from separate properties would be separate property of owner spouse and acknowledging state's public policy determination to enforce premarital agreements).

"The construction of an unambiguous written contract is a question of law for the court." *Willis v. Donnelly*, 199 S.W.3d 262, 275 (Tex. 2006) (citation omitted); *Williams v. Williams*, 246 S.W.3d 207, 215 (Tex. App.—Houston [14th Dist.] 2007, no pet.) ("Because the premarital agreement is not ambiguous, we may construe the agreement as a matter of law."). Whether an agreement is ambiguous is a question of law for the court. *See Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995); *In re Marriage of McNelly*, No. 14-13-00281-CV, 2014 WL 2039855, at *3 (Tex. App.—Houston [14th Dist.] May 15, 2014, pet. denied) (mem. op.) (stating same in context of premarital agreement). "[I]f contractual text 'is subject to two or more reasonable interpretations, it is ambiguous.'" *Bd. of Regents of Univ. of Tex. Sys. v. IDEXX Lab'ys, Inc.*, 691 S.W.3d 438, 443 (Tex. 2024) (citations omitted). "Words aren't ambiguous merely because they can be read differently in the abstract. They must be read in context, another fundamental rule." *Id.* "'For an ambiguity to exist, both interpretations must be *reasonable*.'" *N. Shore Energy, LLC v. Harkins*, 501 S.W.3d 598, 602 (Tex. 2016) (quoting *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996)).

## 2. Application

We begin our analysis with the enforceability of the agreements. The evidence shows that both parties signed the Dissolution Agreement, which was a two-page written document addressing their property, thus we conclude it complies with the

33

statute. *See* Tex. Fam. Code Ann. § 4.102 (governing marital property agreements). Likewise, the Prenuptial Agreement and its "Annexes" are in writing and signed by both parties, so we conclude it likewise complies with the statutory requirements. *See id.* § 4.002 (governing premarital agreements). These agreements are enforceable unless Telegina proves they were (1) not signed voluntarily, or (2) they were unconscionable *and* there was not adequate disclosure. *See id.* §§ 4.006(a), 4.105(a).

As for the Dissolution Agreement, despite conclusory and self-serving statements in her affidavit denying she signed it voluntarily, the summary judgment evidence shows that during the 308b hearing Telegina admitted that she signed the Dissolution Agreement, initialed each page, intended to abide by the document, and she agreed to its terms. This supported the trial court's findings, also attached as summary judgment evidence, that the parties "freely and voluntarily" entered into the Dissolution Agreement.

She also generally responds to the summary judgment motion that the Dissolution Agreement was unconscionable and avers in her affidavit that she was suffering from anxiety and her mother died the month before she signed the agreement. She also states in her affidavit that she did not have the money to consult a lawyer. Still, the summary judgment evidence shows that Telegina reviewed the Dissolution Agreement over the span of three days and negotiated revisions. *See*

34

*Marsh*, 949 S.W.2d at 741 (explaining that agreement signed shortly before wedding was not unconscionable). The summary judgment evidence also shows that Telegina was educated and had a legal background in Russia. *See id.*; *see also In re Marriage of A.M.H.*, 2019 WL 4419195, at *4; *In re Marriage of Smith*, 115 S.W.3d at 135. The Dissolution Agreement specified that Section II of the Prenuptial Agreement survived. Section II of the Prenuptial Agreement provided that each party kept their separate property and any earnings or substitution of that separate property during the marriage likewise remained their separate property. Plus, Telegina received $340,000 from Nechayuk. Most importantly, the Dissolution Agreement itself stated, "the parties acknowledge that they have read and understand this agreement, have not been subjected to any form of coercion, duress or pressure, and believe this agreement to be fair[.]" Thus, viewing the evidence in the light most favorable to Telegina, we conclude that the Dissolution Agreement was not unconscionable. *See In re Marriage of A.M.H.*, 2019 WL 4419195, at *4; *In re Marriage of Smith*, 115 S.W.3d at 135; *Marsh*, 949 S.W.2d at 741. Since we have determined the Dissolution Agreement was not unconscionable, and lack of disclosure forms the second prong of the test to rebut the presumption of enforceability, we do not address Telegina's claims that there was no disclosure. *See Marsh*, 949 S.W.2d at 743; *see also* Tex. Fam. Code Ann. § 4.105(a).

She also contends that the Dissolution Agreement is ambiguous, and she argues the trial court had determined it contained ambiguities. This is an apparent reference to the trial court's prior determination that the Dissolution Agreement was unambiguous, except as to certain language in Sections III (E) and (F) of the Dissolution Agreement relating to the destruction of materials and property they possess about one another and interfering with each other's lives. Even so, the trial court did not grant summary judgment on her claim that Nechayuk breached the Dissolution Agreement by "collecting information on or interfering with [Telegina's] life." The trial court separately dismissed that claim based on Telegina's failure to comply with a court's order sustaining Nechayuk's special exceptions and requiring her to replead to cure the defects. We address the trial court's dismissal of that claim in greater detail later in this opinion.

In her affidavit responding to the summary judgment, Telegina also complains that the Dissolution Agreement's language incorporating the Prenuptial Agreement is ambiguous, because it: (1) refers to incorrect dates; and (2) refers to Section II of the Prenuptial Agreement "Private Property" rather than "Separate Property," which was the language used in the Prenuptial Agreement. Regarding the incorrect dates, Telegina does not allege or offer any evidence that any other Prenuptial Agreement exists such that the parties would not recognize the document referenced. After years of litigation, there is only one Prenuptial Agreement in over 39,000 pages of the

Clerk's Record. Since there is only one reasonable interpretation, the Dissolution Agreement's reference to the parties' sole Prenuptial Agreement, even with an incorrect date, does not create an ambiguity. *See Harkins*, 501 S.W.3d at 602.

Additionally, she contends the fact that there is a disparity in how the Dissolution Agreement References Section II of the Prenuptial Agreement means there is an ambiguity. We disagree. We must read the words in context. *See Bd. of Regents of Univ. of Tex. Sys.*, 691 S.W.3d at 443. Doing so reveals that the Dissolution Agreement expressly provided that the

> prenuptial agreement entered by the PARTIES on July 12, 2010, including all its Amendments entered on July 12, 2010 and February 17, 2011, is hereby terminated and rendered null and void without any consequences under any of the Prenuptial agreement provisions and its Amendments for any of the PARTIES, except Section II (Private Property), Section III (Alimony), Section VI (Waiver of Rights Upon Death), Section VI (Debts)[.]

Since the Dissolution Agreement incorporates provisions of the Prenuptial Agreement and designates which of those provisions survive, we also look at the Prenuptial Agreement, reading the words in context. *See id.* The Prenuptial Agreement shows it is divided into sections by Roman numerals, with "Section II" corresponding to "Separate Property," "Section III" corresponding to "Alimony" and later sections addressing "Waiver of Rights Upon Death" and "Debts." There is only one Section II in the sole Prenuptial Agreement, and it only addresses Separate Property. Other than arguing there is no such section as "Private Property" in the

37

Prenuptial Agreement, Telegina advocates no other possible interpretation for the Dissolution Agreement's reference to "Section II" of the Prenuptial Agreement covering "Separate Property." Since Telegina has failed to show more than one reasonable interpretation, the Dissolution Agreement's reference to "Section II (Private Property)" of the Prenuptial Agreement, does not create an ambiguity. *See Harkins*, 501 S.W.3d at 602.

In her Response, Telegina also complains that the Prenuptial Agreement is ambiguous but fails to identify any specific provision that contains an ambiguity. Rather, in her Response, she refers to the Dissolution Agreement, which we addressed above. Her affidavit complains that the original of the Prenuptial Agreement was not produced, complains it "does not look right to me," there are different dates on the document, and it fails to "list a single item of property but has numerous references to such property." She also states that she is "unable to confirm with certainty that the signature on the document is mine[.]" Yet despite complaining of the copy's poor quality, Telegina does not unequivocally deny that she signed the Prenuptial Agreement.

We conclude the parties signed the Dissolution Agreement and Prenuptial Agreement voluntarily, the documents are not unconscionable and are valid and enforceable. *See* Tex. Fam. Code Ann. §§ 4.002, 4.006(a), 4.102, 4.105(a).

38

Telegina also brought a claim for post-divorce division of property. "The burden is on the party seeking the division to establish that community property existed when the marriage was being dissolved and that the property was not divided by the court when rendering the final divorce decree." *Land v. Land*, 561 S.W.3d 624, 634 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (citations omitted); *see also Embesi v. Hall*, No. 09-17-00254-CV, 2018 WL 3579930, at *3 (Tex. App.—Beaumont July 26, 2018, no pet.) (mem. op.) (explaining that party seeking post-divorce division has the burden to prove there is property requiring division that was not addressed by divorce). As the party seeking a post-divorce division of property, Telegina had the burden to prove property existed requiring division. *See Land*, 561 S.W.3d at 634; *see also Embesi*, 2018 WL 3579930, at *3. The Dissolution Agreement terminated the parties' earlier Prenuptial Agreement and declared it "null and void" except for several specific provisions. One surviving provision was "Section II" which governed the characterization of the parties' property in detail. Telegina spent years seeking information about Nechayuk's salary, income, and retirement accounts arguing that she was community property that was not divided in the parties' Russian divorce and required post-divorce division. The parties' Dissolution Agreement read in conjunction with the surviving "Section II" from the Prenuptial Agreement conclusively establishes that none of this was community property. Rather, the parties designated everything they each

brought into the marriage and any earnings thereon during the marriage as separate property. Likewise, they designated all income and earnings each acquired during the marriage as the separate property of the individual earning it, including any passive income derived from those earnings. Retirement accounts were also the separate property of the individual spouse. Since the parties' Dissolution Agreement and surviving Section II of the Prenuptial Agreement conclusively establish there was no community property requiring post-divorce division, Nechayuk was entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Zive*, 644 S.W.3d at 173; *Henkel*, 441 S.W.3d at 251. The trial court did not err by granting summary judgment for Nechayuk on Telegina's claim for post-divorce division of property. *See* Tex. R. Civ. P. 166a(c); *Zive*, 644 S.W.3d at 173; *Henkel*, 441 S.W.3d at 251.

We now address Telegina's claim that the trial court improperly granted summary judgment on her claim for breach of the Prenuptial Agreement, specifically her claims that Nechayuk engaged in affairs. To establish a claim for breach of contract, a party must prove: (1) formation of a valid contract; (2) performance by the plaintiff; (3) the defendant breached the contract; and (4) the plaintiff sustained damages because of the breach. *See S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018) (citation omitted); *Ace Real Prop. Invs., LP v. Cedar Knob Invs., LLC*, No. 09-19-00375-CV, 2022 WL 120016, at *8–9 (Tex. App.—Beaumont Jan. 13, 2022, pet. denied) (mem. op.).

40

In her Response in the trial court, Telegina asserts that he had multiple affairs, and by doing so breached their Prenuptial Agreement. Specifically, Sections VIII and IX of the Prenuptial Agreement and the Annexes prohibited adultery or either spouse contacting individuals designated as "persona non-grata." If either party did so, under the Prenuptial Agreement, the offending spouse had to pay the other spouse $50,000. Even so, the Dissolution Agreement terminated the Prenuptial Agreement, rendering it "null and void," except for specified provisions. The parties did not designate adultery, "persona non-grata," and Annex provisions as surviving the contract's termination. Under the Dissolution Agreement, Nechayuk agreed to pay Telegina $340,000 and the parties agreed they would assume the responsibilities set forth in the Dissolution Agreement, which they agreed was "exhaustive and no other responsibility resulting from the marriage or dissolution of the marriage will be assumed by any of the PARTIES." Since the summary judgment evidence conclusively establishes that the parties' adultery provisions and Annex from the Prenuptial Agreement did not survive termination, Telegina cannot show Nechayuk breached their Agreement, which is a requisite element of her breach of contract claim. *See Elliott*, 564 S.W.3d at 847; *Ace Real Prop. Invs., LP*, 2022 WL 120016, at *8–9. Therefore, Nechayuk was entitled to summary judgment on Telegina's claim that he breached the Prenuptial Agreement by committing adultery. *See* Tex. R. Civ. P. 166a(c).

41

Next, we address Telegina's claims that the trial court erred by granting summary judgment on her claims that Nechayuk breached the Dissolution Agreement by: lying to her about their 2016 tax return, preventing her from accessing the return, and keeping the tax refund; and delaying the initial payment under the Dissolution Agreement. Regarding the 2016 tax return and refund claims, that claim predated the parties' Dissolution Agreement, and is also resolved by the parties' express language that their agreement was "exhaustive" and "no other responsibility resulting from the marriage or dissolution of the marriage." The evidence conclusively establishes the parties' Dissolution Agreement did not require return of the 2016 tax refund, which predated the Dissolution Agreement. Since the Dissolution Agreement did not require this, Nechayuk has likewise negated the requisite breach element. *See Elliott*, 564 S.W.3d at 847; *Ace Real Prop. Invs., LP*, 2022 WL 120016, at *8–9. The trial court properly granted summary judgment on Telegina's claim that Nechayuk breached the Dissolution Agreement by failing to return the 2016 tax refund. *See* Tex. R. Civ. P. 166a(c); *Zive*, 644 S.W.3d at 173; *Henkel*, 441 S.W.3d at 251.

Finally, we examine her claim that Nechayuk breached the Dissolution Agreement by paying a portion of the first installment two days late. Nechayuk argues in Motion for Summary Judgment that Telegina "has not shown nor can she establish that she suffered any monetary loss as a result of the two-day late partial

42

payment." The parties' Dissolution Agreement outlines a payment schedule requiring Nechayuk to pay the first $100,000 installment to Telegina within one week after the Russian Consulate issued the divorce certificate. The evidence establishes they Nechayuk paid the entire $100,000 in $25,000 installments over four days due to "bank procedures" but was two days late with one of the payments. The evidence also shows that Telegina accepted the $100,000 and did not complain at the time. Once Nechayuk established that Telegina was not damaged when he paid a portion of the first installment two days late, the burden shifted to her to present evidence creating a genuine issue of material fact on damages. *See Energen Res. Corp.*, 642 S.W.3d at 514 (citations omitted); *see also* Tex. R. Civ. P. 166a(c). Since she failed to do so, the trial court did not err in granting Nechayuk's summary judgment on her claim that he breached the Dissolution Agreement by making part of the first payment two days late. *See Energen Res. Corp.*, 642 S.W.3d at 514 (citations omitted); *see also* Tex. R. Civ. P. 166a(c).

We overrule issues ten and twenty.

## C. Special Exceptions and Dismissal of Telegina's Remaining Claim

We now turn to issue sixty-five and the trial court's dismissal of Telegina's sole remaining claim that Nechayuk breached the Dissolution Agreement by "collecting information on or interfering in [her] life." Telegina contends the trial

43

court abused its discretion when it imposed death-penalty sanctions against her by dismissing this claim.

On December 23, 2020, Nechayuk also filed a separate Motion to Dismiss based on Telegina's repeated failure to comply with the trial court's orders sustaining his special exceptions that required her to replead and cure the pleading defects. Telegina filed multiple petitions alleging various causes of action. Starting in February 2020, Nechayuk filed special exceptions, motions to strike, and motions to dismiss these various petitions. On February 11, 2020, the trial court sustained the special exceptions and first ordered Telegina to replead. The trial court thereafter sustained Nechayuk's additional special exceptions and ordered Telegina to replead five other times, including on November 23, 2020. The trial court's November 23 "Order on Petitioner's Motion to Reconsider Order on Respondent's Special Exceptions to Petitioner's Sixth Amended Petition, Motion to Strike and Motion to Dismiss" addressed deficiencies in Telegina's Sixth Amended Petition and required her to file a seventh amended petition curing the pleading defects by December 4, 2020.[2] As with the prior orders, the trial court warned Telegina that "failure to comply with this order may result in dismissal of her suit[.]" Telegina chose not to amend her petition.

_____

[2]On October 19, 2020, the first trial judge voluntarily recused herself. On Telegina's motion, the new judge reconsidered the previous judge's ruling on special exceptions to the Sixth Amended Petition.

On March 5, 2021, the trial court signed a separate Order granting Nechayuk's Motion to Dismiss filed on December 23, 2020. The Order states that "to the extent any issues remain following the Court's Order Granting Respondent's Motion for Summary Judgment, the Court GRANTS Respondent's Motion to Dismiss in its entirety."

## 1. Standard of Review and Law

A trial court has broad discretion to grant special exceptions, and an appellate court will not disturb the trial court's ruling absent an abuse of discretion. *Ford v. Performance Aircraft Servs.*, 178 S.W.3d 330, 335 (Tex. App.—Fort Worth 2005, pet. denied); *Hefley v. Sentry Ins.,* 131 S.W.3d 63, 65 (Tex. App.—San Antonio 2003, pet. denied); *Mowbray v. Avery*, 76 S.W.3d 663, 678 (Tex. App.—Corpus Christi 2002, pet. denied); *see also Hoover v. J&J Home Inspections*, No. 09-13-00454-CV, 2015 WL 367105, at *4 (Tex. App.—Beaumont Jan. 29, 2015, no pet.) (mem. op.). If the party fails to amend after being ordered to do so, or if the amended pleading fails to state a cause of action, the trial court may dismiss the case. *Mowbray,* 76 S.W.3d at 677–78; *see also Gallien v. Washington Mut. Home Loans, Inc.*, 209 S.W.3d 856, 862–64 (Tex. App.—Texarkana 2006, no pet.) (A trial court generally should afford a party the right to amend and cure the defect before striking a claim, but a trial court has the inherent power to strike a party's pleadings and enter judgment for the opposing party in response to repeated noncompliance

with the trial court's orders.) (citing *Humphreys v. Meadows,* 938 S.W.2d 750, 753 (Tex. App.—Fort Worth 1996, writ denied)). "Accordingly, a trial court may strike pleadings and enter a judgment for the opposing party or dismiss when the party fails to replead 'in response to repeated noncompliance with the trial court's orders.'" *Hoover,* 2015 WL 367105, at \*4 (quoting *Gallien,* 209 S.W.3d at 864). If the trial court sustains special exceptions and requires a party to replead, the party must obey the court's order and file a curative amendment or suffer the consequences of dismissal. *Hoover,* 2015 WL 367105, at \*4; *Hefley,* 131 S.W.3d at 65. "[T]he right to amend is not unlimited and it 'does not extend to the privilege of multiple opportunities to amend in the face of repeated grants of special exceptions.'" *Hoover,* 2015 WL 367105, at \*4; (quoting *Mowbray,* 76 S.W.3d at 678).

## 2. Application

The trial court sustained Nechayuk's special exceptions and ordered Telegina to replead six times. The trial court admonished her if she failed to cure the pleading defects, her claims could be dismissed. The trial court ordered her to file a seventh amended petition to cure defects in her Sixth Amended Petition, which she failed to do. Given the trial court's repeated orders to replead and her failure to cure the pleading defects, we conclude the trial court did not abuse its discretion in dismissing Telegina's remaining claim that Nechayuk breached the Dissolution Agreement by

46

collecting information on her or interfering with her life. *See Hoover*, 2015 WL 367105, at *4; *see also Gallien*, 209 S.W.3d at 862–64; *Mowbray*, 76 S.W.3d at 677–78. We overrule issue sixty-five.

### D. Attorney's Fees

We turn to Telegina's claim that the trial court erred by awarding Nechayuk attorney's fees and costs for defending the lawsuit. We address issues ninety-four and ninety-five, in which the trial court erred by failing to require Nechayuk to segregate his attorney's fees. She also contends the evidence is legally and factually insufficient to support the award, because the jury awarded "significantly more" than Nechayuk requested.

Nechayuk requested attorney's fees in the trial court. He pleaded for attorney's fees in his Answer and requested them in his Motion for Summary Judgment. In October 2021, he also filed a separate Motion for Attorney's Fees after the trial court granted his summary judgment while leaving open the issue of attorney's fees. With his Motion for Attorney's Fees, Nechayuk attached many exhibits, including, among others, messages from Telegina dated March 16 and 17, 2017. In the messages, Telegina threatens to litigate and advises Nechayuk to hire lawyers in multiple countries, warning that if he did not contact her and "come to an agreement" within "24 hours" they "will be engaged in litigation till there will be no courts on earth left. And then we'll start litigation on Mars[.]" Before trial, Telegina

47

filed her "1st Amended Combined Motion for Clarification, Reset of Trial Dates and Request for Amended Scheduling Order, Motion for Continuance, Motion to Compel, Motion to Rule," which included a request that the trial court require Nechayuk to segregate his fees based on her Sixth Amended Petition. The trial court denied her Motion to Compel and ruled that Nechayuk did not have to segregate the bills for attorney's fees after reasoning that the trial court may award fees in a divorce suit and that all Telegina's claims alleged in her suit for divorce and that the attorney's fees were solely for representing Nechayuk in the divorce. She again complained about the lack of segregation in her "Emergency Motion to Stay Trial Court Proceedings or in the Alternative – Motion to Reconsider Court's Order of May 3, 2022 Motion for Continuance."

The parties tried the sole issue of attorney's fees to the jury, but the trial court did not require Nechayuk to segregate his claim for fees. Following a jury trial, the trial court awarded Nechayuk the following attorneys' fees, consistent with the jury's answers: $816,871.50 to defend against the divorce suit and mandamus actions in the trial court; $150,000.00 for representation in the court of appeals; $30,000.00 to file a petition for review in the Supreme Court of Texas; $100,000.00 for merits briefing in the Supreme Court of Texas; and $20,000.00 through oral argument and completion of Supreme Court of Texas proceedings. The trial court

also awarded Nechayuk $10,647.00 for costs and expenses incurred to defend against the suit and related mandamus actions.

The jury heard testimony from Nechayuk's lawyer, Tasha Peeples regarding the attorney's fees and costs incurred. Evidence was admitted showing Telegina's threats to continue litigation "there will be no courts on earth left" and "on Mars." Additional evidence admitted included an itemized list of Telegina's filings and pleadings through the course of the litigation, CVs for Nechayuk's attorneys, the letters of representation with the attorneys' rates, documentation showing itemized fees and expenses through June 2022 were $683,254.76, attorney's fee invoices itemized by timekeeper, date, hourly rate, task, and time spent, and fee invoices for Nechayuk's experts and Russian translating services. The jury also heard Peeples's testimony that she believed Telegina would appeal, and they were asking for reasonable and necessary fees if that occurred. Peeples explained that after June 2022, in July and August, they incurred an additional $100,000, plus each day they were in trial it cost approximately $10,000 to their client. The trial lasted five days. Peeples also testified that Telegina was litigating "very aggressively," so they "had to defend very aggressively."

Peeples also testified that she believed handling the matter for Nechayuk at the Court of Appeals level "could easily be 50,000 to $75,000" given the types of pleadings Telegina filed in the past. If she filed a petition with the Supreme Court of

Texas, Peeples testified it could be $15,000 if the Court did not request a response, but if it did, it would cost another $50,000 if there was no oral argument. She explained that if the Court granted oral argument it "could easily be another 10 or $15,000."

Peeples testified that the attorney's fees incurred by Nechayuk were "reasonable, … necessary, and required." Peeples testified they were seeking attorney's fees under every available avenue, including under Family Code provisions and for breach of contract. Telegina's expert on attorney's fees, Nicholas Dupre, also testified. He did not challenge the amount of fees incurred by Nechayuk or contest that they were reasonable and necessary.

## 1. Standard of Review and Applicable Law

We review a trial court's grant of attorney's fees for an abuse of discretion, but we review the amount of attorney's fees awarded under a legal sufficiency standard. *See Messier v. Messier*, 458 S.W.3d 155, 165 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (discussing fees in the context of divorce and post-divorce enforcement action). As noted elsewhere in this opinion, a trial court abuses its discretion when it acts arbitrarily or unreasonably or without reference to any guiding rules and principles. *See Downer*, 701 S.W.2d at 241–42. Since we review the amount of attorney's fees awarded under a legal sufficiency standard, we will

affirm if more than a scintilla of evidence supports the award. *See Wal–Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003).

Attorney's fees are recoverable only when allowed by statute or by the parties' agreement. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). The Family Code authorizes the award of attorney's fees, costs, and expenses in divorce actions and in post-divorce actions. *See* Tex. Fam. Code Ann. § 6.708 (authorizing award of attorney's fees, costs, and expenses in divorce action), § 9.013 (authorizing award of costs in an enforcement action), § 9.014 (authorizing award of attorney's fees in enforcement action). Likewise, attorney's fees are authorized in a breach of contract cause of action. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8).

Generally, when a lawsuit involves multiple causes of action, claimants are required to segregate fees between claims for which they are recoverable and claims for which they are not. *Chapa*, 212 S.W.3d at 311. "Segregation is not required when attorney's fees are recoverable for all causes of action." *Land*, 561 S.W.3d at 639–40 (citing *Law Office of David E. Williams, II, P.C. v. Fort Worth Tex. Magazine Venture, LP*, No. 02-10-00373-CV, 2011 WL 2651865, at *4 (Tex. App.—Fort Worth July 7, 2011, no pet.) (mem. op.)). Additionally, "when discrete legal services advance both a recoverable and unrecoverable claim[,] ... they are so intertwined that they need not be segregated." *Chapa*, 212 S.W.3d at 313–14; *Land*, 561 S.W.3d at

51

640. One of our sister courts has explained, "The language of section 6.708 is very broad, and we construe it to give the trial court discretion to award a party any or all of its costs incurred in a suit for dissolution of a marriage, even if the suit includes other claims as well." *Smith v. Deneve*, 285 S.W.3d 904, 918 (Tex. App.—Dallas 2009, no pet.).

## 2. Application

The record reflects that Telegina sued Nechayuk for divorce despite the fact the parties had already obtained a divorce from the Russian Consulate. The record further shows that despite the incongruent nature of the causes of action, Telegina sued for breaches of the Dissolution Agreement and Prenuptial Agreement while simultaneously arguing those agreements should not be enforced. The record likewise establishes that Telegina sought a post-divorce division of community property, despite the Prenuptial Agreement and Dissolution Agreement expressly characterizing the parties' property as separate. The record also shows that for years she repeatedly filed lengthy motions regularly exceeding a hundred pages with exhibits that were redundant and asking the trial court to reconsider its prior rulings.

Telegina's claims required Nechayuk to defend against a divorce action, post-divorce division claim, and claims for breaches of contract simultaneously. Additionally, he had to defend against her other asserted causes of action for torts and fraud in the inducement of the contract, and Nechayuk necessarily had to prove

the validity of the contracts and their enforceability. That was required to determine whether the contracts preclude those causes of action where the Dissolution Agreement states it is "exhaustive" and meant to outline the parties' responsibilities and "to settle once and for all what each of the PARTIES owes" the other. Since the "discrete legal services" by Nechayuk's attorneys needed to defend against the divorce suit, post-divorce division claim, and establish the enforceability of the agreements precluding her tort and fraud claims, the recoverable and any non-recoverable claims "are so intertwined that they need not be segregated." *Chapa*, 212 S.W.3d at 313–14; *Land*, 561 S.W.3d at 640; *see also* Tex. Fam. Code Ann. §§ 6.708, 9.014; Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8).

As for the sufficiency of the evidence for the attorney's fees incurred in defending the case through trial, the jury heard evidence that Telegina aggressively litigated this case. The jury also heard testimony and saw other evidence that supported the amount of attorney's fees in this case through trial. Nechayuk's experts testified that the fees incurred were reasonable and necessary, which Telegina failed to contradict. Since more than a scintilla of evidence supports the attorney's fees awarded through trial, we conclude the evidence was sufficient to support the award of attorney's fees incurred in the trial court. *See Canchola*, 121 S.W.3d at 739. We overrule issues ninety-four and ninety-five in part as it relates to the attorney's fees incurred in the trial court.

That said, the record reflects the jury awarded almost double the amount of attorney's fees for each stage of the appeal. On the upper end of Peeples's estimation, the cost of attorney's fees for appeal would be $155,000.00, but the jury awarded $300,000.00. "When an appellant complains that the evidence is insufficient to support a trial court's award of attorney's fees and we agree but conclude the evidence is sufficient to support an award of a lesser amount of fees, we may suggest a remittitur of the fees under Texas Rule of Appellate Procedure 46.3." *Wendt v. Moore*, No. 14-22-00263-CV, 2024 WL 4456965, at *8 (Tex. App.—Houston [14th Dist.] Oct. 10, 2024, no pet. h.) (mem. op.) (citing *Advanced Tech. Transfer & Intell. Prop. Grp. LLC v. Krenek*, 627 S.W.3d 540, 547 (Tex. App.—Houston [14th Dist.] 2021, no pet.); *Corral-Lerma v. Border Demolition & Env't Inc.*, 467 S.W.3d 109, 128 (Tex. App.—El Paso 2015, pet. denied)). Here, since the evidence is legally and factually sufficient to support an award of appellate attorney's fees to Nechayuk of $155,000.00 but not in the amount found by the jury and included in the judgment, we suggest a remittitur in the amount of $145,000.00. *See id.*; *see also* Tex. R. App. P. 46.3. We sustain issues ninety-four and ninety-five in part and to the extent they challenge the amount of the appellate attorney's fees awarded.

# IV. CONCLUSION

Except the award of appellate attorney's fees, we affirm the trial court's judgment. We affirm the award of appellate attorney's fees conditioned on the remittitur of $145,000.00. *See* Tex. R. App. P. 46.3. If Nechayuk files a remittitur of $145,000.00 with this Court within fifteen days of this opinion and notifies this Court of the same, we will reform the trial court's judgment and, as reformed, affirm the judgment. *See id.* at 46.3, 46.5. If the Clerk of this Court does not receive Nechayuk's remittitur within fifteen days of this opinion, we will reverse the trial court's judgment as to the entire award of appellate attorney's fees and remand the cause to the trial court for a new trial on the issue of appellate attorney's fees.

AFFIRMED IN PART, CONDITIONALLY AFFIRMED IN PART WITH REMITTITUR SUGGESTED.

W. SCOTT GOLEMON
Chief Justice

Submitted on June 24, 2024
Opinion Delivered December 12, 2024

Before Golemon, C.J., Johnson and Chambers, JJ.